2012 Ark. App. 562

Gary HOWARD, Individually and as Administrator of the Estate of Odis Howard, Deceased, Appellant

v.

Lauren ADAMS and Brady & Jackson, P.L.L.C., Appellees.

No. CA 11–566.

Court of Appeals of Arkansas.

Oct. 10, 2012.

evant and prejudicial evidence; (6) awarding attorney fees to Adams and her legal-malpractice insurance carrier; and (7) awarding the attorney for the estate, Harry McDermott, $21,296 for fees and costs.

## I. *Background*

The history of this case is set out in *Howard I*, but we reiterate certain facts to explain our analysis. Howard's father and stepmother, Odis and Mabel Howard, hired attorney Bill Watkins in 1998 to create an estate plan. Watkins drafted a trust to hold the couple's assets, including forty-six acres that Odis owned. The trust provided that, upon the deaths of both settlors, the trust property would go to Howard, who was Odis's only child.

Mabel signed the trust documents in 1998, but Odis did not execute the trust or sign the deed conveying his forty-six acres. By June 2000, the family was concerned about Odis's health and asked Howard to serve as Odis's guardian. Howard agreed to do so and met with Watkins, who filed a guardianship petition on Howard's behalf. The court granted the petition on June 21, 2000, authorizing Howard to serve as guardian for a period of ninety days.

Howard met with Watkins in December 2000 where, according to him, Watkins advised him to sign the trust and the deed as Odis's guardian, despite the expiration of the ninety-day guardianship. Howard signed the documents but later claimed that Watkins backdated his signature to September 2000; that Watkins did not explain that Howard's and Mabel's interests were in conflict; and that Watkins did not inform Howard that, in the absence of the trust documents, he stood to inherit Odis's real property. Howard also averred that Watkins promised to alter the trust document to grant him, his daughter Samantha, and Mabel equal rights as co-trustees.

Harry McDermott, Fayetteville, for appellants.

Friday, Eldredge & Clark, LLP, Fayetteville, by: Clifford W. Plunkett and Seth Haines, for appellees.

JOSEPHINE LINKER HART, Judge.

Appellant Gary Howard, individually and as the administrator of his late father's estate, sued appellees Lauren Adams and her law firm, Brady & Jackson (collectively Adams), for breach of contract, professional negligence, and deceit. The gist of Howard's complaint was that Adams failed to pursue a legal-malpractice claim against another attorney, Bill Watkins, who had previously represented Howard and his father. Following our reversal of a summary judgment in *Howard v. Adams*, 2009 Ark.App. 621, 332 S.W.3d 24 (*Howard I*), the case went to trial, and the jury found that, although Watkins had committed deceit and breached his fiduciary duty during his period of legal representation, Adams did not agree to pursue a claim against Watkins, nor did she act deceitfully or negligently. Howard appeals and argues that the circuit court erred in (1) failing to instruct the jury on contract interpretation, contractual privity, and the statute of limitations; (2) precluding him from asserting damages in his individual capacity; (3) preventing him from trying the issue of Watkins's liability using the "case within a case" method; (4) directing a verdict against the estate on its claim for negligence; (5) introducing irrel-

Odis died in January 2001. Thereafter, Watkins drafted several amendments to the trust, which diminished and eventually eliminated Howard's role as trustee. By July 2002, Mabel asserted that she was the sole trustee and that the trust property belonged to her.

These events led Howard to seek legal counsel from appellee Adams in an effort to recover the real property from the trust. Adams agreed to represent Howard and, at some point, spoke with Bill Watkins and his malpractice carrier about the circumstances surrounding the trust. Other than those basic facts, the terms of Adams's representation of Howard are in complete conflict. According to Howard, he did not sign a written representation contract with Adams when they first met in 2002; rather, they entered into an oral agreement that Odis's estate would be probated free of charge and that Adams would collect all of her fees from Watkins's malpractice carrier. Howard maintains that, when Adams presented him with a written contract in 2004, indicating that she would charge a one-third contingency fee to recover the trust property, she represented that the contract was a mere formality for Watkins's malpractice insurer. Howard contends that he signed the contract only after Adams wrote the following notation on the back of the contract: "will see malpractice insurance to re-pay attny fees & losses (probate & taxes)—Bill [Watkins] has 1m in coverage CNA has been notified—if insurance is insufficient to cover cost of litigation we agree to prorate reduction of fees."

Adams denies making an agreement to recover her fees from Watkins's malpractice carrier or to pursue a claim against Watkins. She asserts that Howard asked her to take the case on a contingency basis because he could not afford her hourly rate. She also claims that Howard signed a representation contract in 2002, which was lost, and later signed the above mentioned 2004 contract, agreeing to pay a contingency fee. According to Adams, the handwriting on the back of the contract constituted notes she made to herself at a later time.

Regardless of the parties' competing versions of these events, it is undisputed that Adams represented Howard successfully. In February 2005, she obtained a summary judgment in a lawsuit against Mabel, removing the forty-six-acre tract from the trust and placing it in the Odis Howard estate. Thereafter, according to Howard, he asked Adams how the suit against Bill Watkins was going. Adams replied that she was not planning to sue Watkins, and she indicated to Howard that he would owe her, as a contingency fee, one-third of the $1.8 million sale price of the real property.

At this juncture, Howard hired his current attorney, Harry McDermott, who fired Adams and demanded that she relinquish her fees. Adams responded with a claim against the Odis Howard estate for "33% of the real property recovered or the sum of $613,333."

## II.  Howard's Lawsuit against Adams

On August 8, 2005, Howard sued Adams, claiming that she committed negligence, deceit, and breach of contract when she sought attorney fees from Odis Howard's estate rather than obtaining her fees from Bill Watkins's malpractice carrier. Howard later amended his complaint to reflect that he was suing as administrator of his father's estate as well as in his individual capacity. Adams counterclaimed against Howard for her contingency fee, which remained unpaid.

On February 16, 2007, the circuit court determined that Adams's lien against the estate was properly filed. The court, how-

ever, allowed Howard to pursue his complaint against Adams to offset the amount of the lien. Howard tried his case to a jury in early 2011 on theories of breach of an oral contract, legal malpractice, and deceit. The circuit court bifurcated the liability and damages portions of the trial.

During the liability phase, Howard put forth, as part of his malpractice proof, evidence that his claim against Watkins would have succeeded if Adams had pursued it (often referred to as proving a case within a case). The jury was therefore instructed to determine Watkins's liability as well as Adams's liability.

At the conclusion of the proof, the jurors found that a suit against Watkins would have been successful but that Adams did not agree to pursue such a claim, nor did she act with negligence or deceit. The circuit court entered judgment in favor of Adams, leading to this appeal.

### III. *Jury Instructions*

█ Howard argues that the circuit court erred in failing to give several proffered jury instructions. A party is entitled to an instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving it. *Bedell v. Williams,* 2012 Ark. 75, 386 S.W.3d 493. We will not reverse a trial court's refusal to give a proffered instruction unless there was an abuse of discretion. *Id.* Additionally, the appellant must demonstrate how he was prejudiced by the trial court's failure to give the proffered instruction. *See Pope v. Overton,* 2011 Ark. 11, 376 S.W.3d 400; *Armstrong Remodeling & Constr., LLC v. Cardenas,* 2012 Ark. App. 387, 417 S.W.3d 748.

█ The first instructions at issue concern the contract cause of action. Howard proffered four instructions that, taken together, told the jury that the parties disputed the meaning of the written contingency-fee contract and the handwriting on the back of the contract; that the front and back of the contract should be interpreted to "give effect to what the parties intended"; that weight should be given to the meaning placed on the contract by the parties, as shown by their statements, acts, or conduct after the contract was made; and that the contract must be interpreted as a whole, with different clauses being read together. In short, Howard proffered instructions that were predicated on the existence of a contractual ambiguity to be resolved by the jury.

We affirm the trial court's decision not to give these proffered instructions. Howard's theory at trial was that he wanted to "throw out" the 2004 written contingency-fee contract and rely on an alleged *oral* agreement in which Adams promised to seek her fees from Watkins's malpractice carrier. Howard cited the handwriting on the back of the written contract merely as proof that the oral contract existed. The essential question at trial, therefore, was not the meaning of the written contingency-fee contract; rather, the question was which contract governed—the oral contract, on which Howard relied, or the written one, on which Adams relied. The jury was called upon to choose a contract, and not to interpret one. We therefore see no abuse of discretion in the trial court's refusal to give the instructions.[1]

█ Howard also argues that the trial court abused its discretion in failing to give a proffered instruction on contractual priv-

1. Howard contends that the circuit court remarked before trial that the terms of the parties' contract were ambiguous and required interpretation by the fact-finder. Even if the court's pretrial remarks can be so characterized, they did not bind the court to give any particular instructions after hearing all of the evidence in the case.

ity. As part of Howard's "case within a case," he sought to prove that Watkins had acted as his personal attorney, that Watkins and he were in privity, and that a malpractice claim against Watkins would have had merit. In accordance with this proof, the trial court instructed the jury on contractual privity. Howard proffered a different instruction, containing exceptions to a party's need to prove privity.[2] He now argues that the court's instruction was inadequate because it omitted the exceptions.

Howard cannot demonstrate prejudice on this point because the jury found in his favor on the privity issue. In its verdict interrogatories, the jury determined that Howard and Watkins were in privity. Consequently, there is no basis for reversal on this point.

■ Lastly, Howard argues that the trial court abused its discretion by failing to give a proffered instruction on the statute of limitations. The instruction set forth the manner of calculating the statute of limitations in a legal-malpractice case and stated that a client has three years from the date of the attorney's negligence to file a malpractice suit. Howard contends that the instruction would have helped the jury to determine whether Adams was negligent in failing to inform Howard of the time limit for filing suit against Watkins.

While the proffered instruction contains a correct statement of the law, Howard has not convinced us that he was prejudiced by the absence of the instruction. The jury heard unrefuted testimony that the limitations period was three years. Further, Howard's expert testified that Adams breached the standard of care by allowing the three-year statute of limitations to run on the claim against Watkins. Given this proof, and Howard's very limited argument on this point, we cannot say that he was adversely affected by the court's refusal to instruct the jurors on the statute of limitations or its manner of accrual.[3]

### IV. *Personal Damage to Howard*

■ In a pretrial ruling, the circuit court determined that Howard could not claim damages in his individual capacity because his attorney had previously stated in court that "in truth, the estate is what was damaged, not Gary Howard" and that Howard was not going to "get any money in his own pocket." On appeal, Howard argues that the court erred in precluding him from proving individual damages.

The admission or exclusion of evidence will not be reversed in the absence of an abuse of discretion. *Montgomery Ward & Co. v. Anderson*, 334 Ark. 561, 976 S.W.2d 382 (1998).

We note first that, despite the court's pretrial ruling, Howard presented evidence of potential damage during the liability phase, and the court ruled that his evidence was sufficient to avoid a directed verdict. Secondly, because the entire case was resolved at the liability phase in favor of Adams, the question of Howard's damages was moot once the lack of liability was determined. *See generally Agracat,*

---

**2.** The exceptions listed were that no privity of contract is required (1) to assert a claim for acts, omissions, decisions, or conduct by the attorney that constitutes deceit or intentional misrepresentation; or (2) to assert a malpractice claim where the attorney was aware that the primary intent of the client was to benefit another person or estate, the attorney identi-

fies the other person in writing to the client, and the attorney sends a copy of the writing to the person identified.

**3.** Howard's opening brief presented arguments regarding another dozen proffered instructions. Those arguments were expressly abandoned in his reply brief.

*Inc. v. AFS–NWA, LLC,* 2012 Ark. App. 372, 2012 WL 1943334. Thus, no abuse of discretion occurred here.

## V. Use of the "Case-within-a-case" Method

Howard contends that the circuit court erred when it prevented him from employing the case-within-a-case method to prove that attorney Bill Watkins committed malpractice. To the contrary, the record is replete with evidence on the issue of Watkins's malpractice. Howard's true complaint is that the court excluded, on the ground of hearsay, certain testimony by Howard and his daughter regarding some of Watkins's out-of-court statements.

Howard cannot show that he was prejudiced by the court's evidentiary ruling. Even without the benefit of the excluded testimony, the jury found that Watkins was negligent and deceitful in his representation of Howard. The court's ruling therefore had no effect on the jury's verdict. We will not reverse a trial court's evidentiary ruling absent a showing of prejudice. *Schmidt v. Stearman,* 98 Ark. App. 167, 253 S.W.3d 35 (2007).

## VI. Directed Verdict on the Estate's Negligence Claim

At the close of Howard's case in chief, the circuit court granted Adams's motion for a directed verdict on the negligence/legal-malpractice claim filed by Howard as administrator of Odis's estate. The court determined that, although Howard's expert witness testified that Adams violated the standard of care as to Howard individually, the expert did not testify that Adams violated the standard of care with regard to the estate.

In a legal-malpractice case, a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that this conduct proximately caused the plaintiff's damages. *S. Farm Bureau Cas. Ins. Co. v. Daggett,* 354 Ark. 112, 118 S.W.3d 525 (2003). *See Grassi v. Hyden,* 2010 Ark. App. 203, 374 S.W.3d 183. In the absence of such expert testimony, a directed verdict in favor of the defendant is proper. *See id.* The only exception is where the trial court determines that expert testimony is not necessary because the case falls within the common-knowledge exception. *Barnes v. Everett,* 351 Ark. 479, 95 S.W.3d 740 (2003).[4]

An individual, in his own capacity, and that same individual, in a representative capacity, are separate and distinct parties. *St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County,* 348 Ark. 197, 73 S.W.3d 584 (2002). Accordingly, Howard and the estate were distinct plaintiffs in the suit against Adams with separate claims for malpractice. Consequently, when the estate, as a separate party, failed to put forth expert testimony that Adams committed legal malpractice against it, a directed verdict was proper. *Grassi, supra.*

Moreover, this issue is very likely moot. The estate claimed that it was saddled with attorney fees due to Adams's failure to pursue a recovery from Watkins. The jury found, however, that Adams did not act deceitfully toward the estate and made no contract with the estate to sue Watkins. A fact-finder's determination on one aspect of a case may render other aspects moot. *See Billingsley v. Planit*

---

4. Howard asserts that the negligence in this case was within the realm of the jurors' common knowledge and required no expert testimony. Based on the complex issues and proof in this case, we conclude that expert testimony was necessary.

*Dirt Excavation & Concrete, Inc.*, 2012 Ark. App. 266, 399 S.W.3d 729.

## VII. *Irrelevant or Prejudicial Evidence*

During cross-examination, Adams elicited testimony from Howard that he filed bankruptcy in 1985 and did not report a fourteen-acre tract of property as an asset in that proceeding, even though he considered himself the owner. Howard also testified that he had more recently sued his mother, Pearlene Ford, in a dispute over which of them owned the property. He acknowledged that, during a 2007 deposition in that lawsuit, he stated that he had previously told his mother not to deed the land to him because he did not want to disclose it or risk losing it to his creditors. Howard objected to the inquiry,[5] to which Adams responded that the evidence was admissible as proof of Howard's credibility. The circuit court agreed and allowed the testimony. Howard contends that the court abused its discretion because the evidence was irrelevant, highly prejudicial, and improper proof of other crimes, wrongs, or acts. Ark. R. Evid. 401, 403, & 404 (2012).

We quickly dispose of Howard's arguments regarding Rule 404 because he did not object on that ground below, either before or during trial. We do not reach evidentiary arguments raised for the first time on appeal. *See Garcia v. State*, 2011 Ark. App. 340, 2011 WL 1795296.

As for Howard's claim that the bankruptcy and the suit against his mother were irrelevant and highly prejudicial, we find no abuse of discretion by the circuit court in admitting the evidence. Evidence may be relevant for impeachment purposes. *See generally House v. Volunteer Transp., Inc.*, 365 Ark. 11, 223 S.W.3d 798 (2006). Here, Adams was attempting to show that Howard, in one proceeding or the other, made untrue statements under oath—either he was untruthful during the 2007 deposition when he stated that the property belonged to him, or he was untruthful in the bankruptcy proceeding when he failed to list the property as one of his assets. Matters affecting the credibility of a witness are always relevant. *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999). Further, because the parties' credibility in this case was of paramount importance, we cannot say that the probative value of Howard's contradictory statements was "substantially outweighed by the danger of unfair prejudice" as required by Rule 403.

Howard also implies that the remoteness of the 1985 bankruptcy rendered it inadmissible. Evidence may be relevant, however, even though it is remote in time. *Gilcrease v. State*, 2009 Ark. 298, 318 S.W.3d 70. In this case, Howard's testimony regarding his bankruptcy was linked with evidence of his 2007 deposition, which is a more recent event. The remoteness of the bankruptcy does not, therefore, render it inadmissible.

Howard additionally argues that certain testimony regarding his conduct as mayor of a small town should not have been admitted. The testimony arose when Adams cross-examined Howard about previous lawsuits to which he had been a party but had not disclosed during discovery. Adams mentioned a federal case in which Howard, as the mayor of Bethel Heights, was alleged to have worn a police uniform, performed traffic stops, and car-

---

**5.** He had also filed a motion in limine to exclude evidence of the bankruptcy and the suit against his mother.

ried a gun, even though he was not a police officer. Howard denied the allegations and, after continued questioning, objected to the inquiry on the ground of irrelevance. The court overruled the objection and allowed a few additional questions.

We are not convinced that allegations of Howard's barely questionable conduct as a small-town mayor affected his substantial rights at trial. Ark. R. Evid. 103(a) (2012). Howard simply has not demonstrated that admission of the evidence warrants reversal. *Milner v. Luttrell,* 2011 Ark. App. 297, 384 S.W.3d 1. We therefore affirm the court's evidentiary rulings.

VIII. *Attorney Fees to Defense Counsel*

During the six-year history of this case, Adams was represented by her personal attorney, Tamra Cochran, and by the law firm of Friday, Eldredge & Clark, which was hired by her legal-malpractice insurer. Following the jury verdict in favor of Adams, the attorneys filed a motion for fees pursuant to Arkansas Code Annotated section 16–22–308 (Repl.1999), which permits an award of attorney fees to the prevailing party in a contract case. The court found that Adams was the prevailing party and that the case was based primarily in contract. The court then awarded $50,502.50 to Tamra Cochran and $168,745.50 to the Friday firm.

On appeal, Howard argues that the case was not based primarily in contract and that the malpractice insurer's attorneys should not have received fees because the insurer was not a party to the litigation. We agree that the case did not sound primarily in contract.

An award of attorney fees is proper under section 16–22–308 only when the action is based *primarily* in contract. *Nationsbanc Mortg. Corp. v. Hopkins,* 82 Ark.App. 91, 114 S.W.3d 757 (2003) (em-

phasis added). Even where a contract claim is a substantial issue in the case, it is not enough to warrant a fee award unless the case sounds primarily in contract. *Meyer v. Riverdale Harbor Mun. Prop. Owners Improvement Dist.,* 58 Ark.App. 91, 947 S.W.2d 20 (1997).

We acknowledge that one of the most seriously contested issues was whether Adams had breached her oral contract with Howard. However, the proof on that issue was as much a part of Howard's legal-malpractice case as his breach-of-contract case. Arkansas Code Annotated section 16–22–310(a) (Supp.2011), as interpreted by our appellate courts, essentially grafts a threshold requirement of privity of contract onto every legal-malpractice action. In *Jackson v. Ivory,* 353 Ark. 847, 856, 120 S.W.3d 587, 592 (2003), the supreme court stated:

We have stated that the plain language of section 16–22–310 requires the plaintiff to have direct privity of contract with the person, partnership, or corporation he or she is suing for legal malpractice. *Nielsen v. Berger–Nielsen,* 347 Ark. 996, 69 S.W.3d 414 (2002); *Madden v. Aldrich,* 346 Ark. 405, 58 S.W.3d 342 (2001); *McDonald v. Pettus,* 337 Ark. 265, 988 S.W.2d 9 (1999). Privity of contract is defined as "that connection or relationship which exists between two or more contracting parties." *Swink v. Ernst & Young,* 322 Ark. 417, 420–21, 908 S.W.2d 660 (1995) (citing Black's Law Dictionary 1079 (5th ed.1979)). We have narrowly construed the privity requirement to require direct privity between the plaintiff and the attorney or entity to be held liable for legal malpractice. *McDonald, supra; Clark v. Ridgeway,* 323 Ark. 378, 914 S.W.2d 745 (1996). In *Clark,* we stated that "the language of this section [16–22–310(a) ]

is precise and clear and reveals that the contract contemplated by the statute relates to a contract for professional services performed by the attorney for the client." 323 Ark. at 386, 914 S.W.2d 745.

There is no question in this case that the parties had either an oral or written agreement and that, as part of their agreement, Adams was working to get the land back into the estate. But the core dispute was whether Adams also orally contracted to make a claim against Watkins and his legal-malpractice carrier. This dispute was at the heart of Howard's legal-malpractice case against Adams. An attorney does not owe a client a duty to pursue all of the legal claims that an attorney may have knowledge of—the attorney's duty is only as extensive as the specific contract for legal services that he or she has entered into with the client. *See Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). Accordingly, the case sounded primarily in tort because, in order for Howard to maintain his cause of action for legal malpractice, he was required to meet the contractual-relationship requirement set forth in section 16–22–310. We therefore reverse the $168,745.50 fee award to the Friday firm.

The fee award to Tamra Cochran requires additional analysis. The court ruled that Cochran was entitled to $50,502.50 for her efforts in establishing the $613,333 lien against the estate. The lien was approved by the court in a February 2007 ruling, approximately four years before the 2011 trial in this case.[6] Yet, Cochran's itemized billing sheets show that she expended considerable time on the case after 2007, including in preparation for and attendance at the 2011 trial. Because Cochran's fee award appears to include time spent in defending Adams at trial, and because we have determined that this case did not sound primarily in contract, a portion of Cochran's $50,502.50 may not be recoverable under section 16–22–308. We reverse and remand Cochran's fee award for reconsideration by the circuit court in light of our ruling.

## IX. *Attorney Fee Award to Harry McDermott*

In *Howard I,* we observed that Howard's attorney, Harry McDermott, performed numerous legal services on behalf of the estate, including obtaining Howard's appointment as administrator; filing an old will of Odis's for probate; settling several matters with Mabel; and handling at least two lawsuits involving the estate's property. We expressed concern that McDermott received only $21,296 of the approximately $90,000 in fees he requested for performing those services, and we invited the circuit court to revisit the award upon remand.

Thereafter, McDermott again requested fees for representing the estate. At an initial hearing, the circuit judge continued the matter because McDermott had no documentation for his fee requests and was charging $200 per hour for some of the clerical and errand duties he performed. The court also noted that many of the tasks for which McDermott sought compensation from the estate appeared to have been performed for Howard individually.

At a second hearing, McDermott provided summary sheets and some documentary evidence of the work he performed. The presentation of proof, both testimonial and documentary, was difficult to follow. The items, however, showed that McDermott

---

6. The lien order was entered under the caption "In the Matter of the Estate of Odis Howard," but bore the same docket number as the present case.

indeed charged a $200–per–hour fee for clerical and errand-running tasks and that some of his work was done before the estate granted Howard permission to hire McDermott. The judge therefore entered an order that stood by her original fee award of $21,296 to McDermott.

An attorney-fee award will be reversed only if the circuit court has abused its discretion. *Harrill & Sutter, PLLC v. Kosin,* 2011 Ark. 51, 378 S.W.3d 135. The circuit court enjoys a superior perspective in assessing the applicable factors in its assessment of what constitutes a reasonable attorney fee. *Worley v. City of Jonesboro,* 2011 Ark. App. 594, 385 S.W.3d 908.

We cannot say that the circuit court abused its discretion in awarding fees to McDermott. As we stated, McDermott's documentation and testimony regarding his fees was confusing. Further, the circuit court considered the factors for attorney-fee awards set forth in *Chrisco v. Sun Industries, Inc.,* 304 Ark. 227, 800 S.W.2d 717 (1990).[7] Given that fact, along with the matters set forth at the hearings, we cannot say that the court acted thoughtlessly or improvidently, as required to show an abuse of discretion. *Tiner v. Tiner,* 2012 Ark. App. 483, 422 S.W.3d 178. We therefore affirm the award of fees to McDermott.

### X. *Cross-appeal*

Adams has filed a cross-appeal, consisting of one argument, to be reached only if we reverse the jury's verdict. Because we uphold the jury's verdict, the cross-appeal is moot. Affirmed in part; reversed and remanded in part.

GLADWIN and MARTIN, JJ., agree.

---

7. The factors include the experience and ability of the attorney; the time and labor required to perform the legal services properly; the amount involved in the case and the results obtained; the novelty and difficulty of the issues involved; the fee customarily charged in the locality for similar legal services; whether the fee is fixed or contingent; the time limitations imposed upon the client or by the circumstances; and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.