Cite as 2025 Ark. App. 430

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-24-404

| | | |
|---|---|---|
| LUCY DOOLEY | | Opinion Delivered September 17, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | | [NO. 66FCV-22-906] |
| DAILY & WOODS, PLLC; AND DOUG CARSON | | |
| | | HONORABLE DIANNA HEWITT LADD, JUDGE |
| | APPELLEES | |
| | | AFFIRMED |

**CINDY GRACE THYER, Judge**

Lucy Dooley appeals the order of the Sebastian County Circuit Court that granted summary judgment in favor of appellees Daily & Woods, PLLC; and Doug Carson (collectively "Carson") on Dooley's legal-malpractice claim for failing to timely file an arbitration action against her former employer, Dillard's Department Stores ("Dillard's"). On appeal, Dooley argues that the circuit court erred in finding that she could not have prevailed on her underlying wrongful-termination claim against Dillard's. We find no error and affirm.

I. *Factual and Procedural Background*

A. Underlying Proceedings

Dooley was hired by Dillard's in 1997. During the course of her employment, Dooley signed four separate arbitration agreements, the most recent of which was dated April 12, 2016. Dillard's terminated Dooley in July 2019 after a coworker filed a formal complaint against her. In November 2019, Dooley filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC). After the EEOC issued a right-to-sue letter, Dooley hired Carson to represent her in her discrimination claim. Carson filed a complaint on Dooley's behalf against Dillard's in the Sebastian County Circuit Court raising claims of age discrimination, reverse racial discrimination, and wrongful termination. Dillard's subsequently sought removal of the case to federal court, where it filed a motion to compel arbitration, citing the arbitration agreements Dooley had signed. The federal district court granted the motion to compel in an order entered on July 1, 2020, and ordered the parties to submit the dispute to arbitration consistent with the terms of their arbitration agreement. This order was not appealed.

The arbitration agreement at issue contained a provision setting a deadline for commencing arbitration:

> Where the [Dillard's] Associate attempts unsuccessfully to commence an action in court and is subsequently ordered to proceed to arbitration, then the Associate must initiate the arbitration process within ninety (90) days after the court order is issued and all available appeals of the order to arbitrate have been exhausted.

Carson filed a demand for arbitration of Dooley's claims, but he did not do so until December 2, 2020, after the ninety-day deadline had passed. An arbitrator was selected in April 2022, and Dillard's thereafter filed a motion to dismiss the demand for arbitration on

2

the basis of Dooley's untimely filing. The arbitrator agreed and granted the motion to dismiss on July 22, 2022.

On October 13, 2022, Dooley filed a legal-malpractice complaint against her attorney, Carson, and his law firm, Daily & Woods. She alleged that as a result of Carson's failure to timely initiate the arbitration proceedings, she was precluded from obtaining relief against Dillard's on her discrimination and wrongful-termination claims.

## B. Summary-Judgment Proceedings

Carson eventually moved for summary judgment, asserting that Dooley could not establish that she would have prevailed against Dillard's in arbitration. In support of the summary-judgment motion, Carson attached the deposition of Charleen Cooper, Dooley's supervisor at Dillard's. Cooper testified that Dooley's personnel file was "six to eight inches" thick and contained multiple disciplinary actions. According to Cooper, Dooley was terminated because she did not treat other associates fairly and had violated multiple company policies and rules. A "Documentation of Disciplinary Action" reflected that Dooley had been told on multiple occasions to respect her coworkers, management staff, and customers; nonetheless, Cooper had received multiple complaints from customers and coworkers about Dooley. Cooper said she had advised Dooley that her behavior was causing a hostile working environment and that Dillard's would no longer tolerate it.

Cooper further testified that she had spoken with several other Dillard's employees about Dooley. Jim Evans told Cooper that when Dooley was at work, the environment became hostile and that customers and associates did not like working with her. Evans added

3

that Dooley consistently lied about other associates and accused them of stealing. Jonny Carmona told Cooper that Dooley would try to take all the sales in her department and would harass customers to check out with her. Niza Christiansen informed Cooper that several people had nearly quit because of Dooley.

Cooper ultimately made the decision to terminate Dooley because of her history of disciplinary write-ups and her repeated violations of associate work rule number 9, which requires associates of Dillard's to treat fellow associates and customers with respect, courtesy, and professionalism. Cooper added that despite her frequent write-ups, Dooley never corrected her behavior. Dooley was terminated, she said, because she created a hostile work environment. Cooper denied that Dooley's age or race played any part in her firing. In response to Dooley's claim that she was terminated because she had reported coworkers for theft, Cooper said she was unaware that Dooley had ever made any such reports of theft to her or to law enforcement. She said that in no way was her decision to terminate Dooley based on Dooley's reporting her colleagues for theft. Cooper clarified that Dooley was an at-will employee and could be terminated "for any reason or no reason."

In the brief accompanying his summary-judgment motion, Carson argued that Dooley could not have prevailed in her underlying action against Dillard's. Specifically, he contended that her claim that she was terminated in retaliation for reporting thefts by her coworkers was unfounded. He further noted that Arkansas, an at-will employment state, recognizes a wrongful-discharge claim only if the employee is "fired in violation of a well-recognized public policy of the state." *See Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 743

4

S.W.2d 380 (1988). Carson argued that because Dooley's termination did not fall into this exception, her wrongful-termination claim against Dillard's would have failed; as such, he was entitled to summary judgment on her malpractice claim.

In her response to Carson's motion for summary judgment, Dooley abandoned her claims for age discrimination and racial discrimination. In addition, she abandoned a claim brought pursuant to the Arkansas Whistle-Blower Act and another claim that she was fired in retaliation for filing an EEOC claim in 2006.[1] She maintained only her claim that Dillard's wrongfully discharged her in violation of public policy because she had reported her associates and sales managers for stealing from Dillard's. In support of her claim, she cited Arkansas Code Annotated section 5-53-112 (Repl. 2024), which criminalizes retaliation against an informant, and Dooley argued that there was "an established public policy favoring citizen informants."

In further support of her response to Carson's motion for summary judgment, Dooley attached several exhibits documenting her disciplinary actions and the complaints against her. These included the formal complaint filed against her by coworker Deidra Bowen; an email from Cooper to her supervisors asking for advice on how to handle Bowen's complaint; a list of approximately twenty disciplinary write-ups against her; excerpts from Cooper's deposition in which she spoke of the multiple disciplinary actions against Dooley; excerpts from Carson's deposition in which he recounted how Dooley told him that she was

---

[1]These claims had been added subsequent to Dooley's original complaint.

a "whistleblower" for reporting that coworkers were stealing merchandise; and Dooley's own affidavit in which she recalled, among other things, how she reported to her store manager and a Dillard's security officer that other employees were stealing merchandise.

In reply, Carson asserted that Dooley had failed to demonstrate that there was a genuine issue of material fact on the issue of whether she would have prevailed on her wrongful-termination claims against Dillard's.

After holding a hearing, the circuit court granted Carson's motion for summary judgment. The court reasoned that Dooley was an at-will employee, and Dooley had failed to provide proof that Cooper, the store manager who fired Dooley, was motivated by any illegal reason when she did so. The court stated that Dooley had presented "no proof beyond speculation and assumptions that she was terminated because she made reports of employee theft." The court further found that neither the public-policy exception set forth in *Sterling Drug, supra*, nor Arkansas Code Annotated section 5-53-112 applied to the facts of the case. Because Dooley's claims for wrongful termination failed as a matter of law, the court concluded that she could not have prevailed in her underlying claim against Dillard's; it therefore followed that Dooley's claims for legal malpractice were without merit. As such, the court granted Carson's motion for summary judgment and dismissed Dooley's claims. Dooley timely appealed.

II. *Standard of Review and Legal-Malpractice Framework*

Summary judgment is appropriately granted when there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Delanno,*

6

*Inc. v. Peace*, 366 Ark. 542, 544, 237 S.W.3d 81, 83 (2006). Once the moving party establishes a prima facie case for summary judgment pursuant to Arkansas Rule of Civil Procedure 56, the burden shifts to the opposing party to meet proof with proof and demonstrate a genuine issue of material fact. *Id*; *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). The burden of sustaining the motion rests with the movant, and all proof must be viewed in the light most favorable to the party resisting the motion, with any doubts or inferences resolved against the moving party. *Id*. Summary judgment is not appropriate where the undisputed evidence nonetheless gives rise to inconsistent hypotheses from which reasonable minds might differ. *Id*. On appellate review, the court considers whether summary judgment was proper by determining if the evidence presented by the moving party leaves any material fact unresolved. *Delanno*, 366 Ark. at 544, 237 S.W.3d at 84. The review encompasses not only the pleadings but also affidavits and other supporting materials. *Id*. at 545, 237 S.W.3d at 84.

Generally, to prevail on a legal-malpractice claim, a plaintiff must establish that the attorney's representation was negligent. *See Anthony v. Kaplan*, 324 Ark. 52, 56–57, 918 S.W.2d 174, 176 (1996). Representation is negligent when the attorney's conduct falls below the accepted standard of care and that this deficiency proximately caused the plaintiff's damages. *Id*. To establish damages and causation, the plaintiff must demonstrate that, but for the attorney's alleged negligence, the outcome of the underlying action would have been different. *Id*. (citing *Callahan v. Clark*, 321 Ark. 376, 901 S.W.2d 842 (1995); *Vanderford v. Penix*, 39 F.3d 209 (8th Cir. 1994)). This requirement, known as the "case within the case"

doctrine, requires that the plaintiff prove the merits of the underlying case as part of the plaintiff's malpractice claim. *Id.*; *see also Howard v. Adams*, 2012 Ark. App. 562, 424 S.W.3d 337. Thus, in order to prevail in her legal-malpractice case, Dooley must demonstrate that, had Carson not missed the deadline for demanding arbitration, she would have prevailed in her wrongful-termination case against Dillard's.

III. *Discussion*

We turn to the merits of Dooley's wrongful-termination claim. In Arkansas, an employer may terminate an employee for good cause, bad cause, or no reason at all under the employment-at-will doctrine. *Hice v. City of Fort Smith*, 75 Ark. App. 410, 58 S.W.3d 870 (2001). Under a public-policy exception, however, an at-will employee may sue for termination "in violation of a well-established public policy of the state." *Sterling Drug*, 294 Ark. 239, 743 S.W.2d 380. This exception applies only when the reason alleged to be the basis for a discharge is so repugnant to the general good as to deserve the label "against public policy." *Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, at 9, 403 S.W.3d 559, 564. The public policy of the state is contravened if an employer discharged an employee for reporting a violation of state or federal law. *Sterling Drug*, 294 Ark. at 250, 743 S.W.2d at 386. This limited public-policy exception does not, however, "protect merely private or proprietary interests." *Id.* at 249, 743 S.W.2d at 385. When a wrongful-termination claim seeks only the redress of a private wrong, the public-policy exception does not apply. *Smith v. Am. Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991).

According to Cooper's deposition, Dooley was fired as a result of a long string of workplace disciplinary actions culminating in a formal complaint from a coworker that Dooley persistently created a hostile working environment. Even accepting Dooley's claim that she was terminated for reporting other employees for stealing merchandise, however, this does not touch on a "well-established public policy of the state." To invoke the public-policy exception to the at-will employment doctrine, a plaintiff must identify a public policy outlined in our statutes. *City of Highfill v. Scantlin*, 2025 Ark. App. 242, 713 S.W.3d 501; *see also Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 472, 40 S.W.3d 784, 790 (2001) ("[A]n at-will employee cannot be terminated if he or she is fired in violation of a well-established public policy of the State . . . , but . . . such public policy must be outlined in our statutes."). Dooley points to no statute that requires an employee to report an alleged internal theft to his or her employer; thus, she cannot demonstrate that her termination on this purported ground violates an established public policy.

Moreover, as stated above, theft of an employer's property implicates only the employer's private interests, unlike the fraud on a government agency at issue in *Sterling Drug*, *supra*. In circumstances such as those presented here, the public-policy exception does not apply.

Nonetheless, Dooley argues that her termination violated Arkansas Code Annotated section 5-53-112. This statute provides as follows:

> (a) A person commits the offense of retaliation against a witness, informant, or juror if he or she harms or threatens to harm another by any unlawful act in retaliation for anything lawfully done in the capacity of witness, informant, or juror.

9

(b) Retaliation against a witness, informant, or juror is a Class C felony.

(c) "Informant" means a person who provides information to any law enforcement agency in an effort to assist the law enforcement agency in solving a crime or apprehending a person suspected of a criminal offense.

Dooley asserts that because she reported a theft, she was an "informant" and that her termination therefore violates the public policy established by this statute.

As the circuit court found, however, this statute requires a report to "a law enforcement agency in solving a crime or apprehending a person suspected of a criminal offense." Dooley's own testimony was that she reported the alleged thefts to a Dillard's store manager and to a security guard. According to Cooper, however, the security guards were not police officers. Moreover, Dooley did not know whether the security guard ever took the matter to the Fort Smith Police Department. Since Dooley did not report the alleged theft to "a law enforcement agency," and her conduct did not qualify her as an "informant" protected by this statute, the circuit court did not err in finding section 5-53-112 inapplicable on the facts of this case.

In short, Dooley failed to satisfy the "case within the case" requirement because she did not show that either the public-policy exception to Arkansas's at-will employment doctrine or the statutory definition of "informant" under section 5-53-112(c) applied. Consequently, Dooley could not establish proximate cause or damages, making the circuit court's grant of summary judgment appropriate. The circuit court thus properly concluded

that Dooley could not prevail on her malpractice claim because she failed to establish the merits of the underlying wrongful-termination action.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Henry McDermott*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Kimberly D. Young* and *Clifford W. Plunkett*, for appellees.