Kimberly POWELL *v.* Charles MARSHALL

CA 04-627 197 S.W.3d 24

Court of Appeals of Arkansas
Opinion delivered November 3, 2004

---

*Hodson, Woods & Snively, LLP*, by: *Bryan Sexton*, for appellant.

*Steven B. Davis*, for appellee.

A NDREE LAYTON ROAF, Judge. Appellant Kimberly Powell appeals from the trial court's decision granting appellee Charles Marshall's petition for change of custody. Powell raises three arguments on appeal: (1) the "unclean hands" doctrine barred Marshall from seeking equitable relief; (2) the evidence presented was insufficient to find that a change in custody was in the child's best interest; (3) as the custodial parent, she should have had a presumption in her favor on her request for relocation.

The parties to this appeal were married in July 1995 and had one child, Payton, born in 1996. They separated in June 1997, and a decree of divorce was entered on November 18, 1997. Pursuant to the decree, Powell was awarded primary custody, with Marshall having standard visitation rights. Both the decree and the visitation

schedule attached to the decree provided that neither party was to have overnight guests of the opposite sex while the child was present. The visitation schedule also stated that neither party was to use or be under the influence of drugs or alcohol when the child was in their care.

On May 15, 2003, Marshall filed a petition for change of custody, alleging that Powell had violated court orders by cohabitating with a man to whom she was not married while the minor child was in her care. In addition to Powell's cohabitation, Marshall alleged that there had been a material change in circumstances due to Powell's planned out-of-state move, which he argued would interfere with his visitation and his relationship with the child. Marshall further alleged that he had remarried and that he and his new wife had another child, in addition to his wife's child from a previous marriage who was close in age to Payton. He argued that Payton had bonded with the other children and that it was not in Payton's best interest to move out of state. Marshall requested that he be granted permanent custody of Payton. Powell filed a response to the petition, raising the defense of unclean hands, and also filed a petition for contempt, alleging that Marshall had failed to pay for medical expenses and that he had consumed alcohol in the presence of the child during his visitation periods.

A hearing was held on February 3, 2004. At the hearing, Powell testified that Payton was currently eight years old and that she had primary custody. Powell admitted that she had cohabitated with two individuals in the presence of Payton in violation of court orders. She stated that she lived with one male in 2000 and that she had been living with Randy Trumbley since March 2003. Powell testified that she had lived with both men because she thought she wanted to marry them, and that she had in fact married Trumbley since the filing of the petition to change custody. She stated that she and Trumbley had been waiting for his divorce to become final before getting married. According to Powell, she believes it is proper to cohabitate "if the man is willing to take on another man's child and raise and be the male figure in his life."

Powell testified that she and Trumbley were planning on moving to Lone Wolf, Oklahoma, where she and her husband had already obtained employment. She stated that she would be working as a secretary and bookkeeper and would be earning $9.00 per hour, in addition to receiving insurance for herself and her son. Powell stated that she would be able to take Payton to and from school and be involved with his activities. She testified that she had

checked out the school he would be attending and had spoken with the principal. She further stated that they would be moving from a two-bedroom trailer into a three-bedroom, two-bath house, which would be free for the first six months. She stated that she has no relatives in the area but that Trumbley has relatives in Mustang and Gary, Oklahoma. Powell also testified that she has friends in the area who show cattle and that Payton was excited about getting into that activity. She stated that there were also bigger cities near where they would be living where Payton would be able to participate in other activities, such as wrestling.

Powell further testified that Marshall was not the best person to have custody of Payton because he had a drinking problem. She stated that she had observed him under the influence several weeks earlier on January 18, when he was bringing Payton home from his visitation. Powell testified that Marshall was not driving but that he was drinking in the vehicle with Payton. She stated that Marshall was slurring his words and asked her to step out in the road, and she guessed that he asked this so that he could run over her. She stated that he was angry with her because she had confronted him about his drinking, and that he had made threats to Trumbley and his son. She also stated that she had filed a harassment charge against Marshall in 1996 or 1997. According to Powell, Marshall had no objection to her cohabitation until she told him that she planned to move, and she stated that the reason he filed the petition to change custody was only because of the move. She further testified that she had never denied visitation to Marshall and had never allowed any problems between them to interfere with visitation.

Marshall testified that he currently lived in Little Rock, Arkansas, and that he had been married for four or five years. He stated that he worked at the Farmer's Co-op and lived in a three-bedroom, two-bath trailer. Marshall testified that his son, Ty, who is three years old, as well as his stepdaughter, Lindsay, who is eleven, lived with them. He stated that he also has another child, Cameron, for whom he paid child support and visits every other weekend. Marshall testified that he wants to see Payton and Ty raised together because Ty thinks highly of Payton. Although his scheduled visitation with Payton was only every other weekend, Marshall stated that he was able to visit with him every weekend and "nearly all summer long." He stated that he took Payton to rodeos and that they went fishing and rode horses. He further stated that he has family that lived nearby and that he takes Payton to visit them.

Marshall testified that he had objected to Powell's cohabitation with males in the presence of Payton in the past and that this was the reason he filed the petition to change custody, not her planned out-of-state move. Marshall admitted that he had been drinking the afternoon of January 18 and that he drank in the car while returning Payton to Powell, although his sister was driving. He testified that he drank one or two beers a day and three or four on the weekend and that he bought a case or two of beer a week. Although Marshall stated that he drinks in front of Payton, he testified that he had never been intoxicated. Marshall admitted that he had been arrested for his second DWI in August and that he did not have a valid driver's license. He further admitted that he was married to Powell at the time his son Cameron was born and that his current wife, Jeanette Marshall, was pregnant with Ty at the time they got married. According to Marshall, he had no problem with Powell's current husband, and he admitted that the cohabitation problem had been resolved by Powell's marriage to Trumbley. However, he stated that he filed the petition because Powell was violating court orders by her living situation. Marshall testified that he does not have a problem with the court ordering him not to drink in front of Payton and that he did not think it was a good thing to do. He stated that he continued drinking in Payton's presence "because the [divorce] papers said that if she could live with a guy over there, then why couldn't I have a beer because we both broke the rules."

Jeanette Marshall testified that she and Charles Marshall had been married for more than three years. She stated that he and Payton had a very good relationship and that they rode horses and went hiking together. She further stated that Ty and Payton had a close relationship and that Payton spent time with Charles's family. Jeanette testified that Charles would drink one or two beers a day or three or four on the weekend. She stated that she had seen him tipsy but never "slobbering drunk." She testified that she had overheard her husband complain about Powell having overnight guests of the opposite sex prior to the time Powell announced her intention to move. Jeanette stated that she had no problems with Powell's new husband, Trumbley, and did not know of any problems that Charles had with him. She further stated that since Powell was now married to Trumbley, the issue of her living with a member of the opposite sex to who she was not married had resolved itself. She testified that she did not live with Charles prior to their marriage due to the presence of her daughter.

At the conclusion of this testimony, Powell moved for a directed verdict, which was denied. She then asked the court to orally amend the pleadings to request that she be allowed to move to Oklahoma. Marshall stated that he had no objection, and the court allowed the amendment. Powell then offered further testimony related to her request to relocate. She stated that Payton had been attending school in Berryville for the past three years and that he was on the honor roll. She stated that Marshall called Payton every evening and asked him about school. Powell testified that she and Trumbley had the opportunity to buy their new house in Oklahoma for $30,000 and that she could not purchase a home for that price in the area in which she currently lived. She testified that she had allowed Marshall additional visitation beyond what was ordered in the past and that she was willing to work with him to ensure that he continued to have visitation after the move. She stated that she was willing to travel to Arkansas at least once a month and that she would allow six weeks of visitation in the summer. She further testified that "anything else the court would require me to do, I would be willing to do it" and that she would be willing for the court to have continuing jurisdiction over the case.

In its ruling, the trial court noted that it had been the order of the court that neither party use or be under the influence of drugs or alcohol in the child's presence or have overnight guests of the opposite sex in the presence of the child unless married to them. The court then continued as follows:

> The polestar for the court is to determine the best interest of the child providing there is a significant change of circumstance which warrant a change in custody. In this case, the court must have a custodial parent who will obey the orders of the court. There is evidence that Mr. Marshall has consumed alcohol during visitation with the child. There is evidence that Mrs. Trumbley has lived for an extended period of time with a person who was not her husband. She continued to cohabit with Mr. Trumbley after the filing of the Petition for Change of Custody. It is apparent to the court that the court cannot rely on Mrs. Marshall to obey the orders of the court. The court is aware of Mr. Marshall's use of alcohol and knows the proof of his remarriage and birth of another half-sibling of Payton. *The court cannot determine if there is any benefit one way or the other as to which parent would have custody.* The court does determine that the law of the State of Arkansas grants a presumption in favor of the custodial parent which must be overcome by evidence presented by

the non-custodial parent. *The court cannot find that the child would be better off by the move.* The court is convinced that the best interest of the child, even without regard to the move, or even acknowledging the presumption in favor of the custodial parent, it appears that the other factors in the case and specifically the factor of the court having faith that the custodial parent will obey orders of the court, *this court is convinced that Mrs. Trumbley will not follow the orders of this court. Taking this into consideration, and Mr. Marshall's long remarriage and birth of a half-sibling will allow the child the opportunity to grow up with a brother.* The court finds that the evidence shows that the custody should be changed to Charles M. Marshall.

(Emphasis added.)

■■ We first consider Powell's argument that the evidence presented was not sufficient to find a change in custody in the child's best interest. A party seeking to modify custody must prove that a material change of circumstances has occurred since the last order of custody or that material facts existed at the time of the decree that were unknown to the court. *Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003). Custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification is in the best interest of the child. *Vo v. Vo*, 78 Ark. App. 134, 79 S.W.3d 388 (2002). The trial court's findings in this regard will not be reversed unless they are clearly erroneous. *Id.* While custody is always modifiable, appellate courts require a more rigid standard for custody modification than for initial custody determinations in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues. *Id.* There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carries a greater weight than those involving the custody of minor children, and our deference to the trial judge in matters of credibility is correspondingly greater in such cases. *Id.*

Powell contends that the evidence was insufficient to meet Marshall's burden of showing a change in circumstances warranting a change of custody. She asserts that the trial court based its ruling on its lack of faith in her ability to follow court orders and on Marshall's remarriage and the birth of a half-brother to Payton. She argues that the court may not modify custody in order to punish the custodial parent for failure to comply with court orders and that a change in circumstances of the non-custodial parent is not alone sufficient to modify custody.

 As Powell argues, the primary consideration in a petition to modify custody is the best interest and welfare of the child, and all other considerations are secondary. *Carver v. May, supra.* "Custody awards are not made or changed to punish or reward or gratify the desires of either parent." *Id.* at 296, 101 S.W.3d at 259. A violation of the trial court's previous orders does not compel a change in custody. *Id.* at 297, 101 S.W.3d at 261. The violation is a factor to be taken into consideration, but it is not so conclusive as to require the court to act contrary to the best interest of the child. *Id.* "To hold otherwise would permit the desire to punish a parent to override the paramount consideration in all custody cases, *i.e.*, the welfare of the child involved." *Id.* Instead, to ensure compliance with its orders, a trial court has at its disposal the power of contempt, which should be used prior to the more drastic measure of changing custody. *Id.*

The trial court in this case found that Powell had violated court orders by her cohabitation with two different men to whom she was not married. The court stated that it was convinced that Powell would not follow the orders of the court and that this fact, in addition to the changes in Marshall's life, warranted the change in custody. The court noted that it was not relying on Powell's planned relocation in deciding to change custody.

 It is true that the appellate courts of this state have never condoned extramarital cohabitation in the presence of a child and that it has been held that this may of itself constitute a material change in circumstances warranting a change in custody. *See, e.g., Hamilton v. Barrett,* 337 Ark. 460, 989 S.W.2d 520 (1999); *Word v. Remick,* 75 Ark. App. 390, 58 S.W.3d 422 (2001); *Thigpen v. Carpenter,* 21 Ark. App. 194, 730 S.W.2d 510 (1987). In fact, in *Hamilton,* the supreme court affirmed the trial court's modification of custody where the mother had violated the court's non-cohabitation order, in addition to the fact that she had remarried and that the father had remarried and had a new child. However, our courts have also recognized a distinction between human weakness leading to isolated acts of indiscretion that do not necessarily adversely affect the welfare of the child, and that moral breakdown leading to promiscuity and depravity, which render one unfit to have custody. *Hepp v. Hepp,* 61 Ark. App. 240, 968 S.W.2d 62 (1998); *Watts v. Watts,* 17 Ark. App. 253, 707 S.W.2d 777 (1986).

■ In this case, as Powell argues, the trial court did not find that her cohabitation had adversely affected the welfare of the child and did not state that her cohabitation necessitated a change in custody. In fact, the court stated that it could not determine whether there was "any benefit one way or the other as to which parent" should have custody. Rather, the trial court found that her noncompliance with court orders, in combination with Marshall's change in circumstances, warranted a change in custody. However, Powell had married Trumbley by the time of the hearing, and she was no longer out of compliance with the court orders. In addition, as the trial court recognized, Marshall had also violated court orders by drinking alcohol in the presence of the child. The trial court's finding that Powell's lack of compliance warranted a change in custody in this case allowed the court's desire to punish her to override the primary consideration in the case, which was the welfare of the child, and this is not proper. *Hepp v. Hepp*; *Ketron v. Ketron*, 15 Ark. App. 325, 692 S.W.2d 261 (1985). As Powell contends, the change in Marshall's circumstances, by his remarriage and the birth of Payton's half-brother, are not alone sufficient to modify custody. *See Mason v. Mason*, 82 Ark. App. 133, 111 S.W.3d 855 (2003). Moreover, Marshall testified that he had intentionally violated the trial court's order by drinking alcohol in the child's presence because Powell was in violation of the court's order by her living arrangements, and that he lacked a driver's license because of his second DWI offense. Because the trial court's modification of custody is clearly against the preponderance of the evidence, we reverse on this point.

■■ Powell also argues that although she requested that she be allowed to move with her son to Oklahoma, she was not given the presumption allowed to the custodial parent in relocation situations. In *Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003), the supreme court held that a presumption now exists in favor of relocation for custodial parents with primary custody, with the burden being on the non-custodial parent to rebut the relocation presumption. The court stated that the custodial parent is no longer required to prove a real advantage to herself and the children in relocating. *Id.* The trial court should use the best interest of the child as the polestar in making a relocation decision and should consider the following factors: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and

the children will relocate; (3) visitation and communication schedule for the non-custodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference. *Id.*

Although evidence was presented by both parties on the issue of relocation, the trial court did not make findings on this issue. While the trial court stated that it was aware of the presumption in favor of relocation, the court went on to state that it "cannot find that the child would be better off by the move." This statement is contrary to the holding in *Hollandsworth*, that the custodial parent need not prove a real advantage to herself and the children in relocating and that the burden is on the non-custodial parent to rebut the relocation presumption. On *de novo* review we conclude that the presumption was not rebutted in this instance. Moreover, it was clear from the trial court's ruling that it found a change in custody was warranted without regard to Powell's relocation. Accordingly, we reverse the decision changing custody to Marshall, and direct that Powell's relocation request be granted.

Because we are reversing the trial court's award of custody and failure to allow the request for relocation based upon Powell's second and third points on appeal, we need not consider her argument regarding the unclean-hands doctrine.

Reversed and remanded for entry of an order consistent with this opinion.

GRIFFEN and NEAL, JJ., agree.