2012 Ark. App. 326

**CENTERPOINT ENERGY GAS TRANSMISSION COMPANY,**
Appellant

v.

**James D. GREEN, Appellee.**

No. CA 11–1197.

Court of Appeals of Arkansas.

May 9, 2012.

Dale Smart, Phillip A. Stone, Smart & Stone, El Dorado, for Appellant.

Michael E. Sanders, Sanders Law Firm, P.A., Hot Springs, for Appellee.

JOHN MAUZY PITTMAN, Judge.

In this eminent-domain case, the circuit court awarded appellee James Green $63,100 as just compensation for a taking by appellant CenterPoint Energy Gas Transmission Company. CenterPoint seeks reversal, arguing that the circuit court failed to enter specific findings of fact and conclusions of law, abused its discretion in admitting evidence, and erred in its just-compensation finding. We affirm.

## I. *Facts*

Green owns 2.358 acres on Lake Catherine in Garland County. A 7,700–square–foot building, which formerly housed a restaurant, is located on the western portion of the tract, near the water. The remain-

der of the property is vacant, with minimal landscaping. Green purchased the property in 2009 for $235,513.31. At that time, a gas-line easement measuring twenty feet wide ran diagonally, southeast to northwest, across much of the eastern and northeastern sections of the property opposite the lake.

On February 11, 2010, CenterPoint filed this condemnation action in Garland County Circuit Court to obtain a forty-foot easement over the property, along with an adjacent temporary workspace easement. The forty-foot easement essentially followed the existing twenty-foot easement but encroached a greater distance into Green's property. CenterPoint deposited $7,200 into the court registry as just compensation to Green, and the circuit court entered an order of possession. Green asked the court to deny CenterPoint's petition or determine the amount of just compensation due him. The parties did not dispute that just compensation would be measured by the difference in the value of Green's property, when put to its highest and best use, immediately before and immediately after the taking, plus an additional amount for the temporary workspace easement. *See Rest Hills Memorial Park, Inc. v. Clayton Chapel Sewer Improvement District No. 233*, 6 Ark.App. 180, 639 S.W.2d 519 (1982); Howard W. Brill, *Arkansas Law of Damages* § 18–4 (4th ed.2002).

At trial, appellee James Green testified that he is a real-estate developer who built several condominium units in Hot Springs. Green said that he had planned to build a sixteen-unit condominium complex consisting of four buildings on the subject property, but the increased width of the new easement prevented him from constructing a fourth building. He acknowledged that no development had actually taken place on the property, but he stated that his profit on condominium projects was generally about $200,000 per four-plex building. Green additionally offered testimony that, during construction, CenterPoint conducted operations and placed heavy equipment on land outside the designated workspace easement. Green attempted to introduce photographs taken during the construction period, but, following CenterPoint's objection, the court accepted the photographs as a proffer and Green's testimony "under reservation."

On Green's behalf, real-estate appraiser Michael Pearce testified that the highest and best use of Green's property was residential development, such as condominiums, townhomes, or zero-lot-line homes. Pearce determined that development of the land as a restaurant site would be worthwhile only as an intermittent use, noting that the restaurant building had reached the end of its economic life. In appraising the property using a comparable-sales approach and a cost approach, Pearce concluded that Green's land had a value of $381,200 before the taking and $285,700 after the taking, for a difference of $95,500; and $2,600 for the temporary construction easement, which yielded a total just-compensation figure of $98,100.

CenterPoint's appraiser, John David Stone, also concluded in his report that the highest and best use of Green's land was residential, with usefulness as commercial property only on an interim basis. Relying primarily on the comparable-sales approach, Stone determined that the difference in value of Green's land before and after the taking was $13,600, which, when added to a figure of $2,400 for the construction easement, resulted in total compensation to Green of $16,100. Stone's calculations relied in part on his determination that the land alone, without improvements, was worth $174,400 after the taking. At trial, Stone testified that there

was not currently a demand for condominiums at the site and that the highest and best use of the property was unknown.

On July 28, 2011, the circuit court issued a letter opinion, finding that the value of Green's property before the taking was $235,000, the value after the taking was $174,400, and the resulting reduction in value was $60,600. The court then added $2,500 as the value of the temporary construction easement, for a total compensation to Green of $63,100.

Upon receipt of the letter ruling, CenterPoint requested "findings of fact and conclusions of law which constitute the grounds for your rulings." The court then entered the following findings and conclusions:

A. Findings of Fact:

1. The value of the property before the taking was $235,000.

2. The value of the property after the taking was $174,400.

3. The diminution in value of the property was $60,600.

4. The value of the temporary construction easement is $2,500.

B. Conclusions of Law:

1. The property owner is entitled to the difference between the value of the property before the taking and the value of the property after the taking.

2. The property owner is entitled to the fair market rental value of the property not taken but used during the construction process.

Thereafter, the court entered judgment in favor of Green for $63,100, amended to $55,900 after Green received the $7,200 CenterPoint had deposited in the court registry.

## II. *Findings of Fact*

CenterPoint argues that additional findings of fact are necessary because it is impossible to ascertain the basis for the circuit court's just-compensation decision. We disagree.

Rule 52(a) of the Arkansas Rules of Civil Procedure provides that, if requested by a party at any time prior to the entry of judgment, in all contested actions tried on the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon. The rule does not place a severe burden upon the trial judge, for the judge needs only to make brief, definite, and pertinent findings of fact and conclusions upon the contested matters. *See BPS, Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000). The trial court need not explain why it found the facts the way it did or give detailed reasons for its decision. David Newbern, John J. Watkins, & D.P. Marshall, *Civil Practice & Procedure* § 30:7 (5th ed.2010). Rather, the findings should be specific enough to enable the appellate court to understand the factual basis and analytical process by which the trial court reached its decision. *Weathersbee v. Wallace*, 14 Ark.App. 174, 686 S.W.2d 447 (1985).

The sole issue in this trial was the amount of just compensation to be awarded to Green, as calculated by the before-and-after values of Green's property and the rental value of that portion of his property used temporarily for construction. In its findings, the court chose $235,000 as the before-value of the property, a figure that fairly corresponds to the amount that Green paid for the property two years before trial. The after-value was found to be $174,400, which matches the after-value assessed by CenterPoint's appraiser, John David Stone. For the temporary easement, the court awarded $2,500 as the average of the figures that were proposed by both appraisers. These

findings are understandable to this court and therefore sufficient to permit appellate review.

CenterPoint cites *McWhorter v. McWhorter*, 70 Ark.App. 41, 14 S.W.3d 528 (2000), where we reversed and remanded for further findings pursuant to Rule 52(a) because we could not determine the basis for the trial court's calculation of appellant's income for child-support purposes. But here, unlike in *McWhorter*, we are able to ascertain the components of the circuit court's decision.

### III. *Evidentiary Rulings*

As the first of two evidentiary challenges, CenterPoint argues that the circuit court erred in admitting Green's testimony regarding the "purported specific building plans on the subject property, including the number of buildings, the number of units, the dimensions of the buildings, the exact placement of the buildings, and even the profit on a per-building and per-unit basis on previous unrelated condominium projects." CenterPoint claims that the testimony was speculative because Green had taken no steps to build condominiums on his property.

We review a circuit court's evidentiary rulings for an abuse of discretion. *See St. Joseph's Mercy Health Center v. Edwards*, 2011 Ark. App. 560, 385 S.W.3d 849. Abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Id.* We also will not reverse a trial court's ruling on the admission of evidence absent a showing of prejudice. *Id.*

CenterPoint correctly states that a property owner whose land has been taken through eminent domain may not testify about the value of potential subdivision lots when no subdivision was in existence at the time of the taking, or where it could not be determined with any degree of certainty that a subdivision would be platted in the near future. *See Arkansas State Highway Commission v. Watkins*, 229 Ark. 27, 313 S.W.2d 86 (1958); *Ozark Gas Transmission System v. Hill*, 10 Ark. App. 415, 664 S.W.2d 892 (1984); *Arkansas Louisiana Gas Co. v. Cates*, 10 Ark. App. 426, 664 S.W.2d 897 (1984). In the cited cases, however, the juries' verdicts in favor of the landowners were unquestionably influenced by the improper testimony of the landowners and their witnesses. We are not convinced that Green's testimony, suggesting a $200,000 loss on a potential condominium development, similarly influenced the trial court's compensation award of $63,100, which was based on the value of the land as a whole. Error may not be predicated on a ruling that admits or excludes evidence unless a substantial right of a party is affected. Ark. R. Evid. 103(a) (2011). *See also Arkansas Louisiana Gas Co. v. Howell*, 244 Ark. 86, 423 S.W.2d 867 (1968).

CenterPoint claims that it did suffer prejudice because the judge stated to Green during trial, "I'm really thinking more about the area where you lost the— you just said you lost the opportunity to put a building." Our reading of the colloquy as a whole, however, indicates that the court was simply trying to understand Green's testimony as Green pointed out the affected area on a diagram. The court's remark evidenced no intention to award compensation to Green on the basis of his alleged lost building opportunity.

We also note that this case was tried to the bench, not to a jury. A trial judge, sitting as fact-finder, is better suited to sort out what evidence is pertinent to the issue at hand, that is, to separate the evidentiary wheat from the chaff. *Walls v.*

*State,* 336 Ark. 490, 986 S.W.2d 397 (1999). Consequently, a nonjury case will not be reversed due to the admission of incompetent evidence unless all of the competent evidence is insufficient to support the judgment or unless it appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. *Rich Mountain Electric Cooperative, Inc. v. Revels,* 311 Ark. 1, 841 S.W.2d 151 (1992). Given that the court based its award on values that bore no relation to Green's purported lost profits on an unconstructed building, we see no grounds for reversal, even if Green's testimony was received in error.

 CenterPoint argues next that the circuit court abused its discretion by admitting testimony and photographs regarding CenterPoint's construction activities that occurred outside the bounds of the workspace easement. Again CenterPoint correctly states the law: temporary conditions prevailing on the land during the course of a construction project have no bearing on the worth of the land prior to the taking or what its worth will be after the project is completed. *Arkansas State Highway Commission v. Post,* 330 Ark. 369, 955 S.W.2d 496 (1997). Thus, evidence of temporary conditions caused by ongoing construction in a partial-taking case is irrelevant, as well as potentially misleading and prejudicial, and should not be admitted. *Id.* But here, the court received Green's testimony "under reservation," and the photographs only as a proffer. Thus, it appears that the offending evidence was never admitted. We therefore consider it highly unlikely that the court, as fact-finder, awarded damages based on conditions that prevailed during the construction project. In fact, the damages for the workspace easement were assessed at $2,500, the mathematical average of the amounts suggested by the two appraisers who testified at trial.

IV. *Just-compensation Finding*

 CenterPoint's final argument is that the circuit court's award of just compensation was clearly against the preponderance of the evidence. In reviewing the findings after a bench trial, we reverse only if the findings are clearly erroneous or clearly against the preponderance of the evidence. *King v. French,* 2011 Ark. App. 257, 383 S.W.3d 426. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake was committed. *Id.*

 CenterPoint first contends that, because Green's appraiser was not tendered as an expert, his opinions regarding the appraisal values and plans for Green's property lacked a basis. *See Southwestern Bell Telephone Co. v. Fulmer,* 269 Ark. 727, 600 S.W.2d 450 (Ark.App.1980). The record indeed reflects that Green did not formally tender appraiser Michael Pearce as an expert, and the court did not expressly declare Pearce an expert witness. Pearce, however, testified about his qualifications as an appraiser at length, including that he had been qualified as an expert in previous cases. He undoubtedly possessed specialized knowledge that would assist the trier of fact in understanding the evidence or determining a fact in issue, and he had knowledge, skill, experience, training, or education that would qualify him to testify in the form of an opinion. Ark. R. Evid. 702. CenterPoint made no objection to Pearce's qualifications, and the court treated Pearce as an expert when questioning him about his appraisal. We therefore see no reversible error in this nonjury case.

■ CenterPoint also argues that Pearce's testimony was incompetent because his report misstated the acreage of the property and relied on comparable sales that bore no resemblance to Green's tract. The court, however, used the recent sales price of the property and the amount assessed by CenterPoint's appraiser as the before-and-after values of the property, without reliance on Pearce's allegedly erroneous figures. Thus, there is no basis for reversal. *See Howell, supra.*

■ CenterPoint further contends that Green failed to establish the market value of his property because he demonstrated no demand for a proposed condominium development. We see no error. The key in calculating just compensation is determining the highest and best use of the property. *See Rest Hills Memorial Park, Inc. v. Clayton Chapel Sewer Improvement District No. 233, supra.* Both appraisers' reports concluded that the maximally productive use of the site, as though it were vacant, was to hold it for residential development.

■ Lastly, CenterPoint argues that, if in fact the circuit court used the $235,000 purchase price of the property as the before-value of the land, and appraiser Stone's $174,400 figure as the after-value, an inconsistency resulted. According to CenterPoint, the former figure included the value of the building on the land while the latter figure did not. No clear error occurred. Both appraisers recognized that the building had lost its economic usefulness. CenterPoint's appraiser stated in his report that the building's contribution to the property's use was interim, and then only until it could be razed or rehabilitated.

Affirmed.

HART and GLOVER, JJ., agree.