

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-163

| | |
|---|---|
| GARY HOWARD, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF ODIS HOWARD, DECEASED <br><br> APPELLANT <br><br> V. <br><br> LAUREN ADAMS, DON BRADY, TODD MAZZANTI, AND ADAMS & BRADY & JACKSON, PLLC <br> APPELLEES | **OPINION DELIVERED:** **APRIL 27, 2016** <br><br> APPEAL FROM THE BENTON COUNTY CIRCUIT COURT <br> [NO. P2003-461-5] <br><br> HONORABLE XOLLIE DUNCAN, JUDGE <br><br><br><br> AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

This is the fourth appeal in a long-standing dispute between appellant Gary Howard, acting individually and as administrator of the estate of his late father, Odis Howard, and appellee Lauren Adams and her law firm (collectively "Adams").[1] In the present case, Gary appeals from an order denying partition of the estate's real property and from a decree foreclosing Adams's attorney-fee lien. We affirm the circuit court's rulings.

The lengthy history of this case is set forth in our previous opinions, so we offer only an abbreviated version of the facts. Adams represented Gary in a lawsuit, which was decided

---

[1] The previous appeals are *Howard v. Adams*, 2009 Ark. App. 621, 332 S.W.3d 24 (*Howard I*); *Howard v. Adams*, 2012 Ark. App. 562, 424 S.W.3d 337 (*Howard II*); *Adams v. Howard*, 2014 Ark. App. 328, 436 S.W.3d 473 (*Howard III*).

in his favor in 2005. The successful outcome resulted in forty-six acres of property being removed from a family trust and placed into the Odis Howard estate, of which Gary was the administrator and sole beneficiary.

Thereafter, a disagreement arose between Gary and Adams over attorney's fees. Adams sought fees equal to one-third of the value of the forty-six acres; Gary denied that Adams was entitled to a contingency fee. The stalemate led to Adams filing an attorney-fee lien on the forty-six acres and a claim against the estate for thirty-three percent of the value of the property. Gary responded by suing Adams in August 2005 for breach of contract, fraud, and negligence.

In February 2007, the circuit court ruled that Adams's attorney-fee lien against the forty-six acres was properly in place. However, the court allowed Gary to pursue his causes of action against Adams in an attempt to offset the amount of the lien. The case went to trial, and the jury found in favor of Adams, resulting in no offsets against her lien claim. After trial, the circuit court awarded Adams $50,502.50 in attorney's fees for the work of her personal lawyer, Tamra Cochran. Gary appealed, and we affirmed the jury's verdict. *See Howard II*. However, we remanded Cochran's fee for recalculation, resulting in a reduction to $30,030. *Id*.

Subsequently, Adams filed a petition in circuit court to foreclose her attorney-fee lien on the forty-six acres. She claimed that, because the property was worth approximately $1.8 million when she recovered it in 2005, she was entitled to one-third of that amount, or $613,333, from the sales proceeds of the property. The circuit court disagreed and, in a

July 2013 order, ruled that Adams's fee would be calculated based on one-third of whatever price the property brought at a future sale. We affirmed the court's ruling in *Howard III*.

Following our decision in *Howard III*, Adams filed another foreclosure petition, which is the subject of the present appeal. Therein, Adams asked the circuit court to order the forty-six acres sold at a judicial sale and to use the sales proceeds to satisfy her attorney-fee lien and pay the $30,030 she owed Cochran. Gary resisted the petition on various grounds and asked the court to partition the property between the estate and Adams instead of selling it. The court denied Gary's request for partition and entered a foreclosure decree. The decree ordered the forty-six acres sold by the commissioner of the court; declared that Adams would have first priority in one-third of the sales proceeds to satisfy her attorney-fee lien; and declared that, after certain offsets, Adams would have second priority in the proceeds to pay $18,529.09 in fees to attorney Tamra Cochran.[2] The remaining balance of the proceeds was earmarked for the court registry to await further rulings. Gary now appeals from the foreclosure decree and from the order denying his request for partition. He raises six arguments for reversal.

## I. *Exclusion of Evidence*

At the foreclosure hearing, Gary called real-estate agent Steve Fineberg to testify that a public sale of the forty-six acres would bring a lower price than a private sale. Fineberg was also expected to testify about Gary's efforts to sell the property on the open market and the possibility of a future private sale. According to Gary, Fineberg's testimony was necessary

---

[2] The court deducted from the original $30,030 owed to Cochran certain appeal costs awarded to Gary following our decision in *Howard II*.

to prove that the forty-six acres should not be sold. *See* Ark. Code Ann. § 28-51-103(e)(1) (Repl. 2012) (requiring a personal representative to show cause why he should not sell property to satisfy a claim against the estate). The circuit court deemed Fineberg's testimony irrelevant, and Gary made the following proffer, through counsel:

> At this time, I'm making a proffer of evidence that Steve Fineberg would have testified about the efforts he made to sell the property. The reason it was priced the way it was, the reduction in price of the property to . . . 1,300,000; that there is someone who wants to buy the property, but they can't make an offer until the very beginning of the year. He will also testify that the market for – or the sale of commercial property has suffered, because of the recession. But, Northwest Arkansas has recovered from the recession and is now on the up and that's based not only on his own opinion, but on sales of commercial property in the area.

Gary now argues that the circuit court erred in refusing to hear Fineberg's testimony.

We will not reverse a circuit court's evidentiary ruling absent an abuse of discretion. *Howard II*, *supra*. Furthermore, error may not be predicated on an evidentiary ruling unless a substantial right is affected and the appellant is prejudiced by the ruling. *Jones v. Coker*, 90 Ark. App. 151, 204 S.W.3d 554 (2005).

Gary has not demonstrated prejudice that would require reversal. The circuit judge stated that, even without the benefit of Fineberg's testimony, she knew that a judicial sale normally yields less money than a private sale. Further, Gary himself testified that he had attempted to sell the property through real-estate agents and that he had a possible buyer in mind who might make a future offer. We also observe that the circuit judge has presided over this matter for several years, during which numerous pleadings have been filed and many arguments made regarding Gary's efforts to sell the property. Fineberg's testimony, therefore, would have added little to the court's deliberative process on the question of



whether to order a public sale of the property. Consequently, there is no reversible error in the court's evidentiary ruling.

## II. *Treating Gary and the Estate as One Entity*

Gary's argument on this issue is virtually impossible to follow, and we are therefore reluctant to address it. *See generally Satterlee v. State*, 289 Ark. 450, 711 S.W.2d 827 (1986) (declining to consider points that are incomprehensible and lacking in convincing authority or argument). However, as best we can determine, Gary contends that the award to Adams for the fees of her personal attorney, Tamra Cochran, was an obligation to be borne by him individually rather than as administrator of the estate.

We see no express language in the circuit court's order making Gary personally responsible for the Cochran fees. Moreover, the caption of the court's fee order lists Gary's name in both his individual and representative capacities. In the absence of a more persuasive argument, we affirm on this point.

## III. *Judicial Sale of the Property*

Gary argues next that the circuit court erred in ordering a judicial sale of the forty-six acres. He reiterates that the property would bring a better price at a private sale. We see no error.

Gary has tried and failed for nearly ten years to sell the property on the open market. Meanwhile, Adams's lien has gone unsatisfied. Thus, even if Gary is correct that a private sale would bring a higher price, and even if his previous attempts to sell the property have been genuine, we do not fault the circuit court for ruling that, at this point, a judicial sale is in order.



Given the circumstances, we affirm the circuit court's decision to order the forty-six acres sold by the commissioner of the court.

## IV. *Partition*

For his next assignment of error, Gary contends that the circuit court should have partitioned the forty-six acres, one-third to Adams and two-thirds to the estate, rather than selling it. We disagree.

Generally, in order to partition real property, it must be held in cotenancy. *See* Ark. Code Ann. §§ 18-60-401(a) & 403 (Repl. 2015). Gary acknowledges this but insists that Adams has been treated throughout this case as though she had an ownership interest in the property. This is a mischaracterization of the facts. Adams has been treated as a claimant who has a lien on real estate. Gary has not persuaded us that Adams's status as a lienholder is the equivalent of being a cotenant in the forty-six acres. We therefore affirm the court's refusal to partition the property.

## V. *Priority of Claims*

Under this heading, Gary argues that Adams cannot recover on her lien until the estate's administration expenses are paid. He cites Arkansas Code Annotated section 28-50-106(a) (Repl. 2012), which gives the costs and expenses of administration priority over claims against the estate when the assets of the estate are insufficient to pay all claims. As explained hereafter, there is no basis for reversal.

An attorney's lien is an interest in the judgment of which the attorney cannot be deprived. *Froelich v. Graham*, 349 Ark. 692, 80 S.W.3d 360 (2002). The lien is created on the day that the client's action is filed and operates as a security in favor of the attorney. *See*

*id.* The lien takes priority over debts that the client owes to other creditors. *Id.* Further, the lien attaches to any judgment or the proceeds thereof "in whosoever's hands they may come." Ark. Code Ann. § 16-22-304(a)(1) (Supp. 2015). In light of these authorities, it is clear that Adams enjoyed a lien on a specific tract of property—the forty-six acres—even after it became part of the estate. She could therefore enforce her lien and foreclose upon it as recourse for the payment of her fee. *See generally* Ark. Code Ann. § 28-50-109(e)(5)(A) & (C) (providing that, with regard to secured claims, the property constituting the security may be sold and the proceeds applied to pay the secured claim, prior to paying the personal representative).

We also note that the validity of Adams's lien, her right of foreclosure, and her right to one-third of the sales proceeds from the forty-six acres has been established by the law of the case. In 2007, the circuit court declared the validity of Adams's attorney-fee lien, and in 2013, the court ruled that Adams could foreclose on the lien and receive one-third of the future sales proceeds from the property. Two opinions from our court have affirmed those rulings. *See Howard III, supra*; *Howard II, supra*. The law-of-the-case doctrine therefore prohibits reconsideration of these issues of law and fact that have already been decided in a prior appeal, or that might have been but were not presented. *See Hayes v. Otto*, 2015 Ark. App. 228.

Accordingly, we affirm the circuit court's decision to grant priority to Adams's attorney-fee lien in the sales proceeds of the forty-six acres.[3]

---

[3] Gary does not make a persuasive argument or cite authority regarding the priority given to the Cochran fee award. Consequently, we do not address that topic. *See Louisiana v. Joint Pipeline Grp.*, 2010 Ark. 374, 373 S.W.3d 292.

VI. *Findings of Fact and Conclusions of Law*

Before the circuit court entered the foreclosure decree, Gary filed a motion for specific findings of fact and conclusions of law pursuant to Ark. R. Civ. P. 52(a) (2015). The court's subsequent decree, as entered, set forth findings of fact and conclusions of law, although not the precise findings and conclusions that Gary had requested. Gary now argues that the court failed to comply with Rule 52(a). We disagree.

Rule 52(a) does not impose a severe burden on the trial judge; the judge need only make brief, definite, and pertinent findings of fact and conclusions upon the contested matters. *Centerpoint Energy Gas Trans. Co. v. Green*, 2012 Ark. App. 326, 413 S.W.3d 867. The court need not explain why it found the facts the way it did or give detailed reasons for its decision. *Id.* Rather, the findings should be specific enough to enable the appellate court to understand the factual basis and analytical process by which the trial court reached its decision. *Id.* The rule does not require specific findings on each and every factual question arising in the lawsuit. *Weathersbee v. Wallace*, 14 Ark. App. 174, 686 S.W.2d 447 (1985).

Here, the circuit court addressed the relevant issues, and the basis for its rulings is clear. We therefore see no purpose to be served by a remand on this issue.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Harry McDermott*, for appellant.

*Tamra Cochran, P.A.*, by: *Tamra Cochran*, for appellees.