Cite as 2026 Ark. App. 52

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-24-165

| | |
|---|---|
| CHRISTINA MORRIS<br>APPELLANT<br><br>V.<br><br>CHAD MORRIS<br>APPELLEE | **Opinion Delivered** January 28, 2026<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04DR-10-1411]<br><br>HONORABLE DOUG SCHRANTZ, JUDGE<br><br>AFFIRMED |

### STEPHANIE POTTER BARRETT, Judge

Pro se appellant, Christina Morris, appeals from a Benton County Circuit Court order denying her petition for modification of visitation and contempt. Christina argues ten points on appeal, all of which allege violations of her Due Process rights under the United States Constitution. However, Christina did not make these constitutional arguments below, and because they are raised for the first time on appeal, they will not be considered by this court. It is well settled that we will not address an issue raised for the first time on appeal, even a constitutional argument. *Rawlins v. State*, 2024 Ark. App. 83, 684 S.W.3d 602. Therefore, this opinion will focus on the crux of each issue on appeal without the constitutional analysis.

Christina presents for this court's consideration the following points on appeal: The circuit court erred in (1) finding the appellee, Chad Morris, did not violate Arkansas Rule of Civil Procedure Rule 5 when effecting service upon her; (2) ruling Christina could not

enjoy standard visitation rights without first finding that she is unfit or a danger to the children; (3) finding Christina did not comply with the requirements of the psychological evaluation of Dr. John Childers; (4) ruling joint custody could never occur; (5) failing to issue a statement of findings of fact and conclusions of law; (6) failing to properly serve her with a final order; (7) restricting her ability to discuss the court case with her children; (8) failing to rule on the motions she filed seeking protection of sensitive information; (9) allowing testimony from witnesses on material outside the scope of the proceedings; and (10) not appointing a new court-appointed therapist. We affirm.

I. *Relevant Facts*

After this court handed down its opinion in *Morris I* in October 2022, Christina filed an emergency petition for modification of visitation and contempt in June 2023.[1] A temporary hearing on Christina's petition was held on July 5, 2023. During this hearing, Christina contended that the original standard visitation order and the 2018 modification of the order that prohibits leaving MC2 alone or in the care of an individual under twenty-one was still in effect after the 2020 modification order. She argued the court must enforce these stipulations—specifically, that MC2 should not be left unsupervised and that Chad must communicate with her through AppClose.[2] Christina claimed Chad had left the

---

[1] The factual background leading to this appeal was thoroughly examined in *Morris I*. Please refer to *Morris v. Morris* (*Morris I*), 2022 Ark. App. 386, at 7–8, 653 S.W.3d 533, 538–39, the details of which we hereby incorporate. In this opinion, we will focus only on the pertinent facts from the prior appeal in the context of the current case.

[2] AppClose is a comprehensive co-parenting mobile and web platform designed to help separated or divorced parents manage communication, schedules, and expenses in a structured, documented way.

children, ages fourteen and fifteen, unattended during a business meeting, thus prompting the need for enforcement.

Chad provided testimony regarding MC2's genetic disorder, medications, and educational background. He disagreed with Christina's view of MC2's diagnosis as a serious health condition and stated he was aware of the requirements of the 2018 modification order but felt confident allowing the children to remain home alone after school due to their age, maturity, and an unblemished record. While Chad used AppClose to communicate with Christina, he stated he was cautious about sharing information to keep her from undermining MC2's educators and making MC2 feel bad about herself. He noted improvements in both children since the transition to supervised visitation, highlighting that Christina had not utilized her supervised visitation rights. At the conclusion of the temporary hearing, the court denied Christina's request for emergency relief and ordered her to pay Chad $1,500 in attorney's fees.

On October 31, 2023, the court held a final hearing on Christina's petition. During this hearing, Christina argued she had not been properly served by either Chad or the court, which the court found disingenuous and "smack[ing] of gamesmanship" because she served Chad by email and asked the court to contact her by email, but she wanted Chad to serve her in person or by regular mail. Christina had actual notice of Chad's pleadings, and the court found no prejudice to her. Christina also requested to proceed only on the issue of her fitness for standard visitation while postponing the contempt aspect, to which the court agreed. However, once testimony began, Christina objected to discussions regarding the children's best interest, claiming it was outside the scope of her fitness evaluation. The court

3

clarified that the best interest of the children is paramount in custody cases, thus remaining a significant consideration.

Ross Kelley, a mental-health therapist, testified on Christina's behalf. He discussed his review of Dr. Childers's reports, which raised concerns that Christina potentially suffers from schizophrenia, delusional disorder, paranoid personality disorder, and obsessive-compulsive disorder. Despite the fact that he had evaluated Christina over multiple sessions and did not see her as a risk to others, Kelley acknowledged during cross-examination that he had not reviewed the foundational reports behind Dr. Childers's conclusions and was not qualified to interpret Dr. Childers's tests. He also noted Christina had not completed the additional recommended psychological testing and agreed she should avoid discussing the court case with her children.

Christina stated that while she was not prepared for overnight visits, she sought increased, unsupervised visitation with the children. Chad testified against unsupervised visitation due to Christina's previous behavior. He explained that Christina discouraged MC2 from listening to her teachers and often emotionally distressed the children by crying during phone conversations. Chad expressed his belief that Christina should be limited in her interactions with the school.

Dr. Crouch, MC2's long-time psychiatrist, testified that he sees MC2 biannually. He noted a period of calm since the custody change in 2019 and characterized Christina as excessively narcissistic: she dismisses differing views and labels herself as an expert in various fields. He explained that Christina's attendance at appointments was often disruptive due to her tendency to intervene excessively in MC2's care.

4

Marlene Bradshaw, a special education coordinator in the Bentonville School District, shared her experiences with MC2 and Christina. Having known MC2 since fourth grade, she detailed MC2's struggles with the transition to high school, which led to her enrollment in a virtual program. Regarding Christina, Bradshaw described her interactions with school staff as contentious and often bullying, noting that Christina was frequently in "attack mode," which hindered collaborative solutions.

Susan Kilpatrick, the court-appointed therapist for the children, testified that MC1 had discovered details about the court case online, which disturbed him. Kilpatrick originally recommended discontinuing unsupervised visitation due to concerns about the information Christina shared with the children. She characterized the relationship between Christina and the children as "not irreparable, but currently very challenging."

At the close of testimony, both Christina and Chad provided closing remarks, and the children's attorney ad litem expressed that unsupervised visitation would be detrimental to the children and that both children asked to maintain supervised visitation with their mother.

At the conclusion of the hearing, the circuit court found that Christina's claims regarding improper service were insincere and not in violation of Arkansas Rule of Civil Procedure 5, issued a protective order concerning the children's medical records, and prohibited both parties from discussing the court case with the children. The court also expressed concern about Christina's history of subjecting MC2 to unnecessary medical tests,[3]

---

[3]See *Morris I* for an in-depth recitation of this issue.

which it deemed abusive, and highlighted Christina's failure to acknowledge or address her mental-health issues.

In its subsequent written order, the court made the following rulings:

(3)     The court finds that based on the testimony presented, that there is absolutely no chance or likelihood that the parties could ever share joint custody due to the actions and behaviors of [Christina], as a result, joint custody of the minor children is not deemed possible or appropriate;

(4)     The court further finds that based on the testimony presented today, that the actions of [Christina] do not show a compliance with the requirements of the psychological evaluation and recommendations of Dr. John H. Childers, Jr. which was entered in the previous trial of this matter on November 24, 2020. Further, it does not appear that [Christina] has established any basis that the modification of visitation would be in the minor children's best interest, and therefore, the court finds and directs that the visitation to be exercised by [Christina] shall be in compliance with the visitation set forth in the order entered on December 16, 2020, whereupon it was stated that . . . [Christina] shall be entitled to exercise supervised visitation . . . .

(5)     In light of [Christina's] statement that she is unclear of what is or is not appropriate, the Court has attempted to clarify once again that [Christina] is specifically ordered and prohibited from discussing the court case or related matters with the children during these visitations. . . .

(6)     [Christina] shall be allowed to have two (2) phone calls per week with the minor children . . . .

(7)     It is further clear from the testimony presented by [Christina] and the testimony of Dr. Matthew Crouch, Susan Kilpatrick, and Maureen Bradshaw that [Christina] has been a disruptive force to the therapy by both Dr. Crouch and Susan Kilpatrick, and in addition, has been disruptive to the educational process not only for [MC2], but for other children as well, and as a result, [Christina] is specifically ordered, prohibited and enjoined from communicating in any manner, entering upon the premises or businesses or other buildings or Matthew Crouch, Susan Kilpatrick, [MC's school] or any other medical or mental health care provider of the parties minor children. . . .

6

II. *Standard of Review*

In domestic-relations cases, we review the evidence de novo and will not reverse the circuit court's findings unless they are clearly erroneous. *Brown v. Brown*, 2012 Ark. 89, 387 S.W.3d 159. We also give special deference to the circuit court's superior position in evaluating the witnesses, their testimony, and the child's best interest. *Id.* Because a circuit court maintains continuing jurisdiction over visitation, it may modify or vacate a prior visitation order when it becomes aware of a material change in circumstances since the previous order. *Id.* The party seeking modification has the burden of demonstrating such a material change in circumstances. *Id.* Regarding visitation, the primary consideration is the best interest of the child. *Id.* Important factors for the court to consider in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and relationship with siblings and other relatives. *Id.* The Arkansas Supreme Court has held that fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Id.*

III. *Analysis*

A. Best-Interest Arguments

Points two, three, and four will be addressed together because they each require a best-interest analysis. While a circuit court retains jurisdiction to modify an initial custody award, the standard for modification is more stringent than it is for the initial determination. *Powell v. Marshall*, 88 Ark. App. 257, 265, 197 S.W.3d 24, 28–29 (2004). A party seeking to modify custody must prove that a material change of circumstances has occurred since

7

the last order of custody or that material facts were unknown to the court when the decree was entered. *Id.*, 197 S.W.3d at 28. If that threshold requirement is met, the court must then determine who should have custody, with the sole consideration being the best interest of the child. *Evans v. McKinney*, 2014 Ark. App. 440, at 4, 440 S.W.3d 357, 359. If the threshold requirement of a material change in circumstances is not met, there is no need for a best-interest finding. *Ellington v. Ellington*, 2019 Ark. App. 395, at 6, 587 S.W.3d 237, 241. The reason for this more stringent standard for modifying custody is to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues. *Powell*, 88 Ark. App. at 265, 197 S.W.3d at 29.

Christina argues that the circuit court erred in denying her request for unsupervised visitation without making a finding that she was unfit. The standard Christina must meet is not whether she is unfit or a danger but whether there was a material change of circumstances warranting modification of the custody award. Change-of-custody decisions must be based on the particular facts and circumstances of each case in relation to the standard of the best interest of the child. *Hudgens v. Martin*, 2009 Ark. App. 462. In addition, credibility determinations are left to the circuit court, and we will not reweigh the evidence. *Glisson v. Glisson*, 2018 Ark. App. 21, at 11, 538 S.W.3d 864, 870. Here, the court found that Christina did not establish any basis that the modification of visitation would be in the children's best interest. Moreover, the children expressed their preference for supervised visitation with Christina, which is an appropriate factor for the lower court to consider. *See Myers v. McCall*, 2009 Ark. App. 541, at 7, 334 S.W.3d 878, 882. We cannot say the circuit court's finding was clearly erroneous; therefore, we affirm on this point.

8

Christina argues in her third point that the circuit court erred in ruling she did not comply with the requirements of the psychological evaluation and the recommendations of Dr. Childers. As the circuit court explained, the best interest of the children must always be considered. It is clear from the record before us that Christina has not complied with the provisions of the 2020 order when it comes to addressing her mental-health issues. Therefore, the lower court was within its discretion to determine there had not been a change in circumstances warranting modification of custody, nor would it be in the children's best interest to do so. We find no merit to her argument and affirm.

For her fourth point on appeal, Christina argues that the circuit court erred by including a ruling in its order that joint custody could never occur. Her argument ignores the importance of the children's best interest. Arkansas Code Annotated section 9-13-101(a)(1)(A)(iii) (Supp. 2025) provides that joint custody is favored in Arkansas. In an action concerning an original custody determination, there is a rebuttable presumption that joint custody is in the child's best interest, but this presumption may be rebutted if the court finds by clear and convincing evidence that joint custody is not in the child's best interest. Ark. Code Ann. § 9-13-101(a)(1)(A)(iv)*(a)* & *(b)(1)*. Therefore, because the court was required to make a best-interest determination when deciding to modify the custody arrangement, its decision regarding joint custody was not in error. However, we note that the circuit court's ruling on the issue of joint custody is open to modification should a material change of circumstances arise and should it be in the children's best interest for the parties to share joint custody. Arkansas uses a present-based analysis when analyzing custody issues, and the circuit court must examine the changes and best interest of the children presented as

9

evidence to the court at the time of the final hearing, not changes that may occur weeks, months, or years down the road. *See Acklin v. Acklin*, 2017 Ark. App. 322, at 2, 521 S.W.3d 538, 539 (holding that material changes had to have occurred since the last order of custody).

B. Failure to Issue a Statement of Findings of Fact and Conclusions of Law

Next, Christina argues that the circuit court erred in denying her motion to provide a statement of findings of fact and conclusions of law. Under Arkansas Rule of Civil Procedure 52, if requested by a party at any time prior to the entry of the judgment, in all contested actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions, the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Ark. R. Civ. P. 52(a)(1). Requests for findings are not necessary for purposes of review. *Id.* Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.* The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. *Id.* If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. *Id.* Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules. *Id.*

In reviewing Rule 52 and the record, including the order Christina references, her argument is without merit. Christina filed her motion *after* the court entered its order.

10

Additionally, the order *did contain* findings of fact and conclusions of law. Rule 52(a) does not impose a strict burden on the circuit court; the court need only make brief, definite, and pertinent findings of fact and conclusions of law on the contested matters. *CenterPoint Energy Gas Transmission Co. v. Green*, 2012 Ark. App. 326, 413 S.W.3d 867. The court need not explain why it found the facts the way it did or give detailed reasons for its decision. *Id.* Rather, the findings should be specific enough to enable the appellate court to understand the factual basis and analytical process by which the circuit court reached its decision. *Id.* The rule does not require specific findings on each and every factual question arising in the lawsuit. *Weathersbee v. Wallace*, 14 Ark. App. 174, 686 S.W.2d 447 (1985). In this case, the circuit court addressed the relevant issues, and the basis for its ruling was clear. Therefore, we affirm.

C.  Service Under Arkansas Rule of Civil Procedure Rule 5

Christina's sixth argument on appeal requires us to determine if she was properly served under Arkansas Rule of Civil Procedure Rule 5. Specifically, Christina asserts the circuit court did not properly serve her with a final order.

Under Rule 5, service on the attorney or on the party shall be made by delivering a copy to him or by sending it to him by regular mail or a commercial delivery company at his last known address or, if no address is known, by leaving it with the clerk of the court. Ark. R. Civ. P. 5(b)(2). Delivery of a copy, for purposes of this paragraph, means handing it to the attorney or to the party; leaving it at his office with his clerk or other person in charge thereof; or, if the office is closed or the person has no office, leaving it at his dwelling house or usual place of abode with some person residing therein who is at least fourteen

11

years of age. *Id.* Service by mail is presumptively complete upon mailing, and service by a commercial delivery company is presumptively complete upon depositing the papers with the company. *Id.* When service is permitted on an attorney, such service may be effected by electronic transmission, including email, provided that the attorney being served has facilities within his or her office to receive and reproduce verbatim electronic transmissions. *Id.* Service is complete upon transmission but is not effective if it does not reach the person to be served. *Id.*

Christina's argument that the circuit court did not properly serve her with the final order is a misapplication of Rule 5. Rule 5(b)(3) requires parties, not the circuit court, to effectuate proper service. Additionally, Rule 5 only requires service under Rule 4[4] when new claims are brought after a final judgment is entered. Ark. R. Civ. P. 5(a). We affirm.

### D. Remaining Points Not Developed or Preserved for Review

Points one, seven, eight, and ten are not preserved for this court's review. Point one, that because Chad served Christine through email, she was not properly served under Rule 5, is not developed enough for this court's review. Christina does not identify which specific pleading Chad failed to serve her with. We will not make an appellant's argument for her or consider an argument that is not properly developed. *Cullen v. Allstate Ins. Co.,* 2021 Ark. App. 445, 2021 WL 5349459. Because this point has not been developed, it provides no grounds for reversal. *Id.*

---

[4]Under Arkansas Rule of Civil Procedure 4(a), immediately on the filing of the complaint, the clerk shall issue a summons to the plaintiff or the plaintiff's attorney, who shall deliver it for service to a person authorized by this statute to serve process.

12

Point seven, that the circuit court erred in restricting Christina's ability to discuss the court case with her children, focuses on freedom of speech and content-based regulations under the First Amendment to the United States Constitution, which, as discussed above, is not preserved for this court's review.

Point eight is that the circuit court erred in not ruling on Christina's motions seeking to seal or redact the records in this case; however, Christina failed to obtain a ruling on this issue. It is an appellant's responsibility to obtain a ruling to preserve an issue for appeal, and the failure to obtain a ruling precludes our review. *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, 427 S.W.3d 651.

Point ten is that the circuit court abused its discretion by allowing Kilpatrick to continue as the minor children's court-ordered therapist, but Christina never objected to this ruling during the lower court proceedings. This court will not address arguments made for the first time on appeal. *Compton v. State*, 2023 Ark. App. 587, 682 S.W.3d 348.

### E. Allowing Witness Testimony Outside the Scope of the Hearing

Finally, Christina argues that the circuit court erred in allowing Ms. Bradshaw, Ms. Kilpatrick, and Dr. Crouch to testify as to the best interest of the children and then use that testimony as a basis for its order prohibiting her from entering school grounds and interfering with the children's educational and medical needs. Circuit courts possess broad discretion in matters pertaining to discovery and the admission of witness testimony. *See Neal v. Neal*, 2016 Ark. App. 223, 491 S.W.3d 467. The witnesses Chad called in this case and the testimony they provided were relevant to the issue of whether Christina had taken steps to improve her mental-health issues and aided the court in determining whether custody

13

modification would be in the minor children's best interest. Ms. Bradshaw, Ms. Kilpatrick, and Dr. Crouch provided testimony that assisted the circuit court in its decision whether to modify custody. We hold that it was within the circuit court's discretion to allow the testimony of these three individuals.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Christina Morris*, pro se appellant.

*Tim Cullen*, for appellee.

14