2011 Ark. App. 383

Carol Calaway **WILSON** as Personal Representative of The Estate of Richard Boggs Calaway and Trustee for Malissa Calaway, Beneficiary of Hartford Insurance Policy No. XXXX, Appellant

v.

**PULASKI BANK & TRUST** and Margarita Eloina Zavalza Calaway, Appellees.

No. CA 10–1152.

Court of Appeals of Arkansas.

May 25, 2011.

Rehearing Denied June 29, 2011.

Frances Morris Finley, Little Rock, for appellant.

Alex T. Gray and Cynthia Satterfield Moody, Little Rock, for appellees.

ROBIN F. WYNNE, Judge.

This is an appeal from the grant of summary judgment. Appellant Carol Calaway Wilson, as the personal representative of the estate of Richard Calaway, her deceased brother, sued appellee Pulaski Bank & Trust (bank) for fraud and negligence in allowing appellee Margarita Calaway, the decedent's widow, to have her name added to the decedent's account with the bank. Wilson amended her complaint and asserted a claim against Calaway and sought to impose a constructive trust on the proceeds of a life insurance policy Calaway received that Wilson contended should have gone to the decedent's daughter by a prior marriage. The Pulaski County Circuit Court granted separate motions for summary judgment filed by the bank and Calaway. This appeal challenges those rulings. We affirm.

In 2003, the decedent was a divorced father raising his then-minor daughter, Malissa Calaway. He was also an administrative law judge with the Workers' Compensation Commission. In August 2003, Hartford issued a life-insurance policy to the decedent. The policy provided for benefits in the amount of $250,000, and the decedent's daughter was the designated beneficiary. Louise Logue was the writing agent on the policy. In October 2004, the decedent changed the policy's beneficiary to the "Estate of Richard Calaway, Carol Wilson as Trustee and Executrix under Last Will and Testament of Richard Calaway."

The decedent was diagnosed with terminal lung cancer in October 2004, causing him to change the beneficiary on the Hartford policy to his sister, as trustee for his daughter. Wilson contends that at the same time, the decedent executed a will leaving everything he owned in trust to his daughter. The decedent married Calaway in March 2007. On December 14, 2007, the decedent executed a change of beneficiary form on his insurance policy, naming Calaway as the sole beneficiary. The de-

cedent sought to change his will to leave his estate to Calaway, or to a friend. However, the will was not executed.

On December 20, 2007, the decedent was admitted to the hospital for complaints of stomach pain and headaches. Wilson contends that he was also having trouble with short term memory and difficulty following a line of thought. Dr. David Lipschitz, who admitted decedent to the hospital, stated that from that date until his death, the decedent was incapable ₃of making decisions about his finances or other important matters. The decedent died on April 24, 2008. Calaway received the proceeds of the Hartford policy and removed approximately $19,000 that remained in the decedent's account at the bank.

On June 6, 2008, Wilson filed suit against the bank, alleging that the bank was negligent in allowing Calaway to add her name to the bank account held by the decedent without requiring the decedent to verify that he, in fact, authorized the addition. Wilson also alleged that the estate lost approximately $41,000 because Calaway wrote checks on the account. The prayer requested that the funds removed by Calaway be returned to the estate and declared to be the sole property of the estate. The bank answered and denied the material allegations.

Wilson amended her complaint to add Calaway and Hartford Insurance Company as defendants.[1] In addition to the claim contained in the original complaint, the amended complaint alleged that Calaway fraudulently added her name to the account, knowing that the decedent lacked the mental capacity to authorize her to do so, and that she forged his name on the account agreement in order to add her name to the account. The complaint further alleged that Calaway fraudulently

obtained the proceeds of the Hartford insurance policy. The bank and Calaway separately answered the amended complaint and, likewise, denied the material allegations.

₄On August 25, 2009, the bank filed its motion for summary judgment, asserting that deposition testimony showed that the majority of the funds in the account were used to pay the decedent's expenses and obligations and that Wilson knew Calaway could write checks on the decedent's account prior to his death. The bank also asserted that the fraud claim must fail because Wilson admitted that she had no actual facts, just her belief, to support the allegation that Calaway acted fraudulently in having her name added to the account. The bank also filed a motion for summary judgment on its cross-claim against Calaway based on the arguments made in the motion for summary judgment against Wilson.

On September 11, 2009, Calaway filed her motion for summary judgment as to Wilson's claim regarding the bank account and insurance proceeds. In support of the motion, Calaway submitted the affidavit of Louise Logue, the agent who sold the decedent the Hartford policy. Logue stated that the decedent had made an appointment to meet with her to discuss the change of beneficiary; that the meeting with the decedent lasted two hours; that during the meeting the decedent appeared to fully understand the conversation, was not disoriented or confused, and was not acting under duress or undue influence. Logue further stated that the change of beneficiary form was properly executed in the manner required by Hartford. Finally, Logue asserted that she did not know and had never met Calaway. Calaway also

---

1. The claims against Hartford were later severed from the claims against the bank and Calaway. Hartford then removed the case to federal court, where it was resolved.

asserted that Wilson acknowledged in her deposition testimony that she had no knowledge of how Calaway's name came to be added to the decedent's account and that she had nothing to dispute Calaway's version of how Calaway's name was added to the account. Calaway also supplemented her motion with a report from a forensic handwriting analyst concluding that the decedent "probably" wrote his name on the challenged change of beneficiary form for the insurance policy and on the bank's account agreement.

Wilson responded to Calaway's motion for summary judgment and filed her own motion for summary judgment against the bank. She argued that Calaway's version of how her name was added to the account could not be possible because the account agreement was dated January 3, 2008, at a time when the decedent lacked the capacity to execute such a document.

On November 12, 2009, Wilson amended her complaint for a third time. The complaint included only two counts: a fraud count alleging that Calaway fraudulently added her name to the decedent's account at the bank, and a count seeking to impose a constructive trust on the proceeds from the Hartford policy. The bank answered the amended complaint and denied the material allegations of the complaint. The bank also incorporated its prior answers and motion for summary judgment, and renewed its motion for summary judgment. Calaway also denied the material allegations of the complaint. She likewise incorporated her prior answers and motion for summary judgment, and renewed her motion for summary judgment.

By order entered on December 9, 2009, the circuit court granted the bank's motion for summary judgment on Wilson's fraud claim in her second amended complaint. The court also granted Calaway summary judgment on the fraud claims and on the claim to the life insurance benefits.

On June 21, 2010, Calaway filed a motion for summary judgment on the claims contained in the third amended complaint. In her supporting affidavit, Calaway asserted her belief that the decedent knew of the import of his decision to change the beneficiary on his insurance policy and was able to arrange and attend the meeting with Louise Logue without assistance. She also denied asking the decedent to make the change or that he told her to hold the proceeds in trust for the decedent's daughter. Calaway also submitted an affidavit from Logue similar to Logue's earlier affidavit set out above.

In her response, Wilson asserted that there were several inconsistencies between the affidavits submitted by Calaway and Logue and their deposition testimony. Wilson also asserted that Logue and the decedent dated and that the decedent had asked Logue to marry him. Wilson submitted the joint affidavit of Linda Marshall and Cindy Rogers, two of the decedent's co-workers at the Workers' Compensation Commission. Rogers and Marshall averred that they saw the decedent almost daily from the time of his hospitalization in December 2007 until his death in April 2008. Rogers and Marshall state that in late December 2007, they heard Calaway remark that she would take care of the decedent's daughter and that the daughter would now be her (Calaway's) baby. Rogers and Marshall also recounted a January 2008 conversation with Calaway in which they discussed the decedent's concern that his daughter receive the best education possible and that Calaway said that she had promised the decedent that she would take care of the decedent's daughter and help her. They further stated that there were numerous other conversations where Calaway repeated this intention on

her part. Wilson also referred to a handwritten statement that she had notarized that averred that she and the decedent had discussed the decedent's wish that his daughter be cared for and able to attend college. She also stated that she heard Calaway say that she (Calaway) would take care of the decedent's daughter and see that she was able to go to college. Wilson also submitted the affidavit of Shelley Muscovalley that recounted two conversations in which Muscovalley heard Calaway say that she (Calaway) would use the insurance proceeds to pay for the decedent's daughter to go to college.

On June 25, 2010, the bank filed its motion for summary judgment. The bank asserted that Wilson bore the burden of proof and that there was no proof as to negligence or fraud in the actions surrounding the addition of Calaway's name to the account. In its supporting brief, the bank reiterated the testimony Wilson gave in her deposition that she had no knowledge or information concerning how Calaway's name was added to the account. The bank also relied on the fact that Wilson knew that Calaway could write checks on her brother's account before his death.

On August 11, 2010, the circuit court entered an order that granted summary judgment to Calaway and the bank. There was no explanation for the ruling. This appeal timely followed.

Our supreme court has set forth the following standard of review with regard to motions for summary judgment:

Our standard of review for summary judgment cases is well established. Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. Moreover, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence.

*Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.*, 365 Ark. 573, 575–76, 231 S.W.3d 720, 723 (2006) (citations omitted). The standard is whether the evidence is sufficient to raise a fact issue, not whether the evidence is sufficient to compel a conclusion. *Wagner v. General Motors Corp.*, 370 Ark. 268, 258 S.W.3d 749 (2007). A fact issue exists, even if the facts are not in dispute, if the facts may result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law. *Id.* In such an instance, summary judgment is inappropriate. *Id.*

For her first point, Wilson argues that the circuit court erred in granting summary judgment to Calaway on the im-

position of a constructive trust and contends that Calaway's affidavit should not be considered because the testimony of an interested party is controverted as a matter of law. However, the cases she cites are inapplicable to the present case in that they do not involve affidavits in support of a motion for summary judgment. This court has held that Arkansas Rule of Civil Procedure 56(e) does not prohibit or limit the filing of self-serving affidavits. *Mathews v. Garner*, 25 Ark.App. 27, 751 S.W.2d 359 (1988). Thus, Wilson has not argued a proper basis for ignoring Calaway's affidavit.

Wilson also argues that Louise Logue's affidavit is at variance with her deposition testimony and, therefore, should not be considered. Wilson contends that she should be able to cross-examine Logue as to why her deposition testimony is at variance with her affidavit. However, she does not develop the argument or cite any authority to support the argument. It has long been held that the appellate courts will not address arguments unless they are sufficiently developed and include citation to authority. *Gatzke v. Weiss*, 375 Ark. 207, 289 S.W.3d 455 (2008). Likewise, we do not make a party's argument for him or her. *Teris, LLC v. Chandler*, 375 Ark. 70, 289 S.W.3d 63 (2008).

Wilson continues her argument under this point by arguing that the existence of a constructive trust is an issue of fact, not law, and that she is entitled to cross-examine Calaway and Logue in order to discover why the decedent would change the beneficiary of his insurance policy. However, she does not cite any authority for these propositions. As noted above, this is fatal to her argument. *Gatzke, supra.*

Wilson's second point is that the court erred in granting the bank's motion for summary judgment. Wilson asserts that she should be able to prove that the bank breached its duty to the decedent by allowing Calaway's name to be added to the account. We find no error.

In her deposition testimony, Wilson acknowledged that she was not present when Calaway's name was added to the account and that she had no evidence to support her claim. Her opinion that the bank was negligent was apparently based on her belief that the bank did not follow its own guidelines by requiring the decedent to be present when Calaway's name was added to the account. The bank submitted a copy of its guidelines that state that existing customers, such as the decedent, are allowed to take the original signature card to have it signed. The bank also submitted the affidavit of Karen Ricardo, one of its officers, who confirmed the interpretation of the guidelines that it was not always necessary for customers to be present when additional account holders are added. Wilson did not controvert this affidavit. Accordingly, because the bank supported its motion for summary judgment by making a prima-facie showing of an absence of factual issues and entitlement to judgment as a matter of law, and Wilson failed to set forth specific facts showing a genuine issue of material fact, summary judgment was properly granted. *See Pyle v. Robertson*, 313 Ark. 692, 694, 858 S.W.2d 662, 663 (1993).

Affirmed.

VAUGHT, C.J., and PITTMAN, J., agree.