

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-15-523

| | |
|---|---|
| CONNIE WATKINS AND RICHARD WATKINS, HUSBAND AND WIFE | OPINION DELIVERED: **SEPTEMBER 28, 2016** |
| | APPEAL FROM THE GREENE COUNTY CIRCUIT COURT [NO. 28CV-2006-335] |
| APPELLANTS | |
| V. | HONORABLE MELISSA BRISTOW RICHARDSON; HONORABLE PAMELA HONEYCUTT; HONORABLE DAVID N. LASER; HONORABLE VICTOR L. HILL, JUDGES |
| PARAGOULD LIGHT & WATER COMMISSION AND CITY OF PARAGOULD | |
| APPELLEES | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Nearly ten years ago, appellee Paragould Light & Water Commission (PLWC) petitioned the Greene County Circuit Court to enjoin appellants Connie and Richard Watkins from interfering with PLWC's efforts to trim trees around its electrical power lines.[1] The lawsuit grew in size and complexity when Mr. and Mrs. Watkins filed a pro se counterclaim that asserted over twenty causes of action ranging from breach of contract to intentional torts to civil-rights violations. The counterclaim was ultimately dismissed by

---

[1] The suit was actually filed by the City of Paragould, acting by and through the Paragould Light & Water Commission. We will refer to PLWC as the operative party for the sake of convenience.



summary judgment, and the circuit court entered an order enjoining Mr. and Mrs. Watkins from interfering with PLWC's tree trimming.

In this pro se appeal, Mr. and Mrs. Watkins argue that several errors occurred over the lengthy history of the case, which saw four separate circuit judges presiding. We find no merit in appellants' arguments and affirm the circuit court's rulings.

I. *Factual Background and Procedural History*

Because appellants do not directly challenge either the sufficiency of the evidence to support the injunction or the propriety of granting summary judgment on their counterclaim, we set forth only those facts necessary for an understanding of the issues on appeal.

Appellants live on a residential lot which has a number of trees along its northern and southern borders. The trees on the southern border are interspersed along an old fence row between appellants' lot and an open field farther to the south. A major PLWC electrical-distribution line runs east and west along that fence row, and at least one power pole is located along the row, at or near the corner of appellants' lot. The proof below revealed that PLWC's line had been in place since at least 1983 and that PLWC had trimmed the trees around the line for many years.

Beginning in 1999, appellants and PLWC experienced a series of conflicts over PLWC's tree-trimming methods. That year, Mrs. Watkins alleged that the trees in her front yard were trimmed improperly while she was out of town. In 2002, she sued PLWC in small-claims court for damage to her trees but later nonsuited the action. In 2003, Bill Fisher, the CEO and general manager of PLWC, agreed that appellants could trim their own trees.

Despite this agreement, appellants requested PLWC's assistance in 2004 to trim the trees in the northern, or front, part of their property. When the crew arrived, Mrs. Watkins objected to the personnel that PLWC had sent to do the job. According to witnesses, she became quite confrontational with the workers and with Bill Fisher. Near this same time, Mr. Watkins attempted to trim a tree himself and caused a limb to fall on a power line. Consequently, PLWC informed appellants that they could trim their own trees if they did so in a manner that met electric-safety codes but that, unless they removed encroaching vegetation by May 1, 2004, PLWC crews would remove it.

In April 2006, Bill Fisher sent appellants a letter reserving PLWC's right to trim trees on the City's rights-of-way or easements. PLWC also commissioned a survey of appellants' property that, unlike previous surveys, located most, if not all, of the southern fence-row trees even farther south, off appellants' property.

With this survey in hand, PLWC attempted to trim the trees near the southern part of appellants' lot in July 2006. However, the trimming crew was met with resistance by Mrs. Watkins and did not accomplish the task. A few months later, on November 9, 2006, PLWC crews arrived at appellants' property to trim the trees on the northern part of the lot. Mrs. Watkins got involved in the process, attempted to direct the tree trimming, and, according to witnesses, insulted and cursed the workers.

Concerned that winter weather was on the horizon, PLWC planned to trim the trees along appellants' southern border on November 28, 2006. Given PLWC's history with appellants, Bill Fisher was concerned about the possibility of a confrontation. He therefore asked the Paragould Police Department to provide officers for a civil standby during the tree

trimming. PLWC crews, along with two police officers, arrived in the open field south of appellants' property on the morning of November 28.

Appellants, who had learned of the trimming, appeared at the work site and tried to stop the trimming. Witnesses would later testify that Mrs. Watkins rushed at the crew, yelled and cursed at them, refused to leave the restricted work area, and slapped a police officer's arm when the officer tried to move her away. As a result, Mrs. Watkins was handcuffed at the scene and taken to the police station. She was later convicted of misdemeanor disorderly conduct in connection with the incident. Our court affirmed the conviction in *Watkins v. State*, 2010 Ark. App. 85, 377 S.W.3d 286, *cert. denied*, 562 U.S. 892 (2010).

A few days after the above-described confrontation, PLWC filed a petition in the circuit court alleging that it owned, or had acquired by prescription, "right of way easements for the erection, maintenance, repair, removal and replacement of its electrical transmission lines . . . on, over, across and through [appellants'] property." PLWC asked that appellants be enjoined from interfering with the easement. Appellants counterclaimed that PLWC had engaged in improper tree trimming and had, among other things, engineered Mrs. Watkins's arrest, defamed her, and interfered with her right to complain publicly about the tree-trimming situation.

In March 2009, Judge Victor Hill dismissed several of the counts in appellants' counterclaim by summary judgment. He ordered that the remaining counts be tried separately from PLWC's claim for an injunction. The case was later transferred to Judge David Laser, who conducted a bench trial on the injunction issue over the course of six days in June and September 2011.

Following the trial, Judge Laser granted PLWC's request for an injunction in an order entered May 10, 2012. Judge Laser ruled that PLWC had maintained the power lines over appellants' property for more than thirty years; that appellants had acquiesced in PLWC's line maintenance without incident for many years; and that PLWC was entitled to

> a right of way easement by prescription relating to the power lines which cross any portion of [appellants'] property, which easement is a total of twenty feet wide (ten feet on either side of the poles in place) for the purpose of utility construction, erection, installation, operation, inspection, maintenance, repair, renewal, substitution, and removal under, over, across and through its entirety.

The court further ruled that, based on appellants' history of confrontational behavior, they should be enjoined from interfering with PLWC's tree trimming. Appellants filed posttrial motions, which were denied, and a notice of appeal. At their request, Judge Laser recused from all future rulings in the case.

We dismissed appellants' appeal without prejudice in *Watkins v. City of Paragould*, 2013 Ark. App. 539, for lack of a final order.[2] The case returned to the circuit court, with Judge Pamela Honeycutt presiding. PLWC soon filed a motion for summary judgment, seeking dismissal of all remaining counts of appellants' counterclaim. Judge Honeycutt granted PLWC's motion for summary judgment in a February 20, 2015 order. Thereafter, appellants filed a complaint against Judge Honeycutt with the Administrative Office of the Courts, and she recused on that basis.

The case was then transferred to Judge Melissa Richardson, who denied appellants' posttrial motions. This appeal followed.

---

[2] Our opinion also noted that appellants had not filed their record in time to pursue an interlocutory appeal from the injunction order.

## II. *Statements of Fraud and Conspiracy*

At the outset, we must take the unusual measure of striking a significant portion of appellants' initial brief and reply brief due to a violation of Rule 1-5 of the Rules of the Supreme Court and Court of Appeals (2016).

Rule 1-5 provides that no appellate argument, brief, or motion shall contain language showing disrespect for the circuit court. If such language appears in an appellate brief, we may strike the offending language. *See Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992).

Throughout appellants' initial brief and reply brief, they assert that one of the circuit judges who presided below purposely interfered with their attempt to perfect an earlier appeal; deceived them with fraudulent advice and promises; deliberately made legal errors; and conspired with PLWC. Appellants also state that two of the other judges who presided on the case adopted and participated in the alleged fraud. These allegations go far beyond a claim of bias and are clearly in violation of Rule 1-5.

Consequently, we strike from appellants' briefs all language accusing the circuit judges in this case of fraud, deceit, conspiracy, and deliberate commission of errors. Further, because these allegations are most egregious in appellants' first two points on appeal, we strike those arguments in their entirety without reaching their merits.

We feel compelled to inform appellants that, by rights, we could strike their entire brief—so pervasive is their offensive language. *See McLemore v. Elliot*, 272 Ark. 306, 614 S.W.2d 226 (1981). And, had appellants been attorneys rather than pro se litigants, we would not hesitate to refer them to the Committee on Professional Conduct. *See generally*

*White v. Priest*, 348 Ark. 783, 73 S.W.3d 572 (2002). However, we have exercised our discretion in a manner that we hope will allow appellants, as nonprofessionals, to appreciate the import of Rule 1-5 without suffering the summary affirmance of their entire appeal. Still, we caution appellants that the First Amendment rights that they have championed in their pleadings and briefs cannot be used as an excuse to make blatant accusations of fraud and conspiracy against the courts. Rule 1-5 stands as an acknowledgement that parties can present their arguments on appeal without the use of disrespectful language.

Appellants should also not mistake our lenience in this instance as acceptance of the kinds of accusations contained in their briefs. We caution appellants that, should they file any future briefs or motions in our court that contain the same or similar language or accusations, we will strike those motions or briefs in their entirety.

Having made this point with what we hope is the utmost clarity, we now proceed to appellants' remaining arguments.

### III. *"Sua Sponte" Declaration of Easement Without Notice*

Appellants argue that Judge Laser's injunction order declared, without notice to them, that PLWC had an easement over part of their property. We see no basis for reversal.

Appellants correctly note that Judge Hill and Judge Laser initially stated that the easement issue would be tried to a jury. However, by the time the injunction issue was set for a bench trial, Judge Laser recognized in a pretrial hearing that, in order for PLWC to prove entitlement to an injunction, it would necessarily have to show that it "had a right to be [on appellants' property]" whether by "deed, easement or prescription." During the bench trial and in their briefs to the court, appellants addressed the easement issue and argued

at several points that no easement existed. Thus, appellants' claims of being surprised when Judge Laser addressed the easement issue in the injunction order are not well taken. Further, appellants' argument that the circuit court rendered an improper declaratory judgment is unavailing. The court simply made a finding that an easement existed as part and parcel of the injunction issue.

## IV. *Dissolution of Agreement*

Appellants' argument under this heading is that PLWC's complaint was a "single cause of action" for an injunction, but the basis for their argument is unclear. We generally decline to consider points that are incomprehensible and lacking in convincing authority or argument. *See Howard v. Adams*, 2016 Ark. App. 222, 490 S.W.3d 678.

As far as we can tell, appellants claim that the injunction dissolved their 2003 agreement with PLWC, which would have allowed them to trim the trees on their property themselves. Actually, the injunction stated that appellants' right to trim their own trees was "conditionally granted" by PLWC. Appellants do not challenge the court's ruling that the agreement was conditional. It is the appellants' burden to demonstrate reversible error, *Nucor Steel-Ark. v. Ark. Pollution Control & Ecol. Comm'n*, 2015 Ark. App. 703, 478 S.W.3d 232, and that has not been done on this point.

## V. *Survey Issues*

As mentioned previously, PLWC commissioned a survey of appellants' boundary lines in 2006. The survey was performed by Bradley Hancock, who referenced the original plat of appellants' neighborhood rather than certain earlier surveys. As a result, Hancock determined that the markers set by the previous surveyors did not accurately reflect the

boundaries of appellants' lot. He therefore established new boundaries, which had the effect of locating most or all of the southern trees on appellants' lot farther south off their property.

At trial, appellants challenged the accuracy of the Hancock survey and likewise do so on appeal. However, the circuit court viewed the competing surveys and determined that the Hancock survey was the most accurate. We generally defer to the circuit court's determination of the credibility of competing surveys. *See Jenkins v. Dale E. & Betty Fogerty Joint Revocable Tr.*, 2011 Ark. App. 720, 386 S.W.3d 704; *Ward v. Adams*, 66 Ark. App. 208, 989 S.W.2d 550 (1999).

Appellants argue further that Hancock's survey is no longer viable because, after completing his survey, he went back to appellants' lot and withdrew his stakes. Thus, appellants contend, the circuit court should not have given the survey credence or attached it to the injunction order.

Hancock testified at trial that he pulled up his survey stakes because he had been harassed by Mrs. Watkins to the point that he thought it best to do so. Nevertheless, he testified that he stood by his opinion of his survey's boundaries. Again, this is a credibility issue for the circuit court to resolve, and we defer to the court's findings. *Jenkins*, *supra*; *Ward*, *supra*.

## VI. *Judicial Estoppel*

Next, appellants argue that the doctrines of judicial estoppel and inconsistent positions prohibit PLWC from claiming an easement over their property. They cite Bill Fisher's testimony at Mrs. Watkins's 2007 criminal proceeding that PLWC had a "blanket" easement (apparently meaning unspecified as to dimensions) over appellants' property. At

the 2011 injunction trial, Fisher admitted his error and stated that he later found out that there was no blanket easement. In its injunction order in this case, the circuit court did not establish a "blanket easement" but instead placed PLWC's easement ten feet on either side of their light poles.

Appellants first contend that the circuit court in the criminal proceeding was misled by Fisher's testimony. One of the necessary elements of judicial estoppel is that the court in the first proceeding must have relied on the position taken by the party. *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004). There is no indication in the criminal trial that the court convicted Mrs. Watkins based on the type of easement that was in place. Rather, the court focused on whether Mrs. Watkins's behavior on November 28, 2006, amounted to disorderly conduct.[3] Furthermore, Mr. Fisher admitted to the court in this case that his earlier, inconsistent testimony was mistaken. Thus, the circuit court here had the correct information before it and was not misled.

## VII. *Recorded Timeline*

Appellants argue that the testimony of several persons who witnessed Mrs. Watkins's behavior on November 28, 2006, is contradicted by a timeline, prepared from a police lapel–microphone recording. They essentially claim that Mrs. Watkins's alleged disorderly conduct could not have taken place during the short period of time reflected in the recording. Mrs. Watkins presented the same argument to this court in the appeal of her criminal conviction. We rejected her argument there because "it appears there were further

---

[3] Appellants included the trial transcript of the criminal proceeding in their present record on appeal.

events that occurred that were not recorded." *Watkins v. State*, 2010 Ark. App. 85 at 3, n.1, 377 S.W.3d at 288, n.1. We see no reason to take a contrary view here and therefore affirm on this point.

## VIII. *Evidentiary Errors*

Under this heading, appellants set forth approximately a dozen alleged evidentiary errors committed by the circuit court. Most, if not all, of the points are unsupported by convincing argument or authority or are unaccompanied by a showing of prejudice. We do not address arguments that are not supported by convincing argument or authority. *Kuelbs v. Hill*, 2010 Ark. App. 793, 379 S.W.3d 716. Nor do we reverse an evidentiary ruling absent a demonstration of prejudice or a showing that a substantial right of the appellant is affected. *Razorback Cab of Ft. Smith, Inc. v. Amon*, 2016 Ark. App. 352, ___ S.W.3d ___.

Most of appellants' arguments (when stripped of the language that we struck from their brief) concern the circuit judge's limitation of their cross-examination of witnesses. We observe that, in the cited instances, the court was either concerned with the relevance of appellants' inquiries; the fact that similar impeaching evidence was already before the court; or that the witnesses had already been on the stand and appellants had failed to cross-examine them at that time. The circuit court has the authority to make the interrogation of witnesses effective and to avoid a waste of time. *See* Ark. R. Evid. 611(a) (2016). Based on the record before us, that authority was duly and properly exercised in this case.

## IX. *Court-Reporter Charges*

Appellants claim that they were overcharged by the court reporter in preparing the record on appeal and that the court-reporter charges around the state are inconsistent. They

ask us to interpret Arkansas Code Annotated section 21-6-402 (Supp. 2015), which sets forth miscellaneous circuit court fees. Appellants have not provided us with sufficient information to determine if a statutory violation has occurred. They are essentially seeking an advisory opinion, which our appellate courts do not issue. *See Brumley v. Keech*, 2012 Ark. 263.

Affirmed.

VIRDEN and GLOVER, JJ., agree.

*Richard and Connie Watkins*, pro se appellants.

*Michael Mosley* and *Scurlock Law Firm*, by: *James V. Scurlock II*, for appellees.