

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-78

|  |  |
|---|---|
| GARY HOWARD, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF ODIS HOWARD, DECEASED | OPINION DELIVERED: DECEMBER 14, 2016 |
|  | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04-P2003-461-5] |
| APPELLANT | |
| V. | HONORABLE XOLLIE DUNCAN, JUDGE |
| LAUREN ADAMS, DON BRADY, TODD MAZZANTI, AND BRADY & JACKSON, PLLC | |
|  | AFFIRMED |
| APPELLEES | |

**ROBERT J. GLADWIN, Chief Judge**

This is the fifth appeal in a dispute between appellant Gary Howard and appellee Lauren Adams over attorney's fees.[1] In the most recent appeal, *Howard IV*, we affirmed the circuit court's decision to foreclose on forty-six acres of property in order to satisfy Adams's attorney-fee lien and other matters. While *Howard IV* was pending, the foreclosure sale took place and was confirmed by the circuit court. The court also awarded additional fees to Adams for the work of her attorney Tamra Cochran, who has represented her throughout

---

[1] The four previous appeals were *Howard v. Adams*, 2009 Ark. App. 621, 332 S.W.3d 24 (*Howard I*); *Howard v. Adams*, 2012 Ark. App. 562, 424 S.W.3d 337 (*Howard II*); *Adams v. Howard*, 2014 Ark. App. 328, 436 S.W.3d 473 (*Howard III*); *Howard v. Adams*, 2016 Ark. App. 222, 490 S.W.3d 678 (*Howard IV*).

 

this dispute. Gary now appeals from the order confirming the sale and the order awarding additional attorney's fees. We affirm.

I. *Background*

The lengthy history of this case is set forth in our earlier opinions. To summarize past events, Adams represented Gary in a lawsuit to recover forty-six acres of property that had been owned by Gary's late father, Odis Howard. Adams obtained a successful outcome, which resulted in the forty-six acres being placed into the Odis Howard estate. Gary was the administrator and sole beneficiary of the estate, subject to the dower interest of his stepmother, Mabel Howard.

Afterward, Adams sought a one-third contingency fee from Gary in accordance with her representation contract. When Gary refused to pay, Adams filed an attorney-fee lien on the forty-six acres and a claim against the estate for thirty-three percent of the property's value. Following a lengthy period in which the forty-six acres remained unsold, Adams began seeking foreclosure of her attorney-fee lien through a judicial sale of the property.

In November 2014, the circuit court ordered foreclosure and public sale of the forty-six acres. The order provided that Adams would receive one third of the sale proceeds in satisfaction of her attorney-fee lien, less $110,500 distributed to Mabel Howard for her dower interest; and that Adams would receive another $18,529.09 from the sale proceeds for fees payable to her lawyer, Tamra Cochran. We affirmed these rulings in *Howard IV*, *supra*.

While the appeal in *Howard IV* was pending, the foreclosure sale was held, and Adams and her law partner bought the forty-six acres for $450,000. The circuit court confirmed



the sale and awarded Adams additional fees of $69,037.50 for the Cochran firm's representation. Gary appeals and raises five arguments for reversal.

## II. *Judicial Sale of the Property*

Gary argues that three errors occurred in connection with the sale of the forty-six acres. As explained below, we find no error in the sale process.

We begin by recognizing that we accord great discretion to the circuit court in matters pertaining to judicial sales. The circuit court is the vendor in judicial sales, and, in the exercise of sound judicial discretion, it may confirm or refuse to confirm a sale made under its order. *Williams v. Hall*, 98 Ark. App. 90, 250 S.W.3d 581 (2007). In determining whether the circuit court abused its discretion, we do not substitute our decision for that of the circuit court; instead, we merely review the case to see whether the circuit court's decision was within the latitude of decisions that it could make in the particular case. *See Kellett v. Pocahontas Fed. Savings & Loan Ass'n*, 25 Ark. App. 243, 756 S.W.2d 926 (1988).

Gary argues first that notice of the sale was not published the requisite number of times in the newspaper. The circuit court's foreclosure decree set forth the following requirement:

> That the Commissioner of this Court hereinafter appointed shall, after advertising the time, terms, and place of sale for twenty (20) or more days by publication in a newspaper published or circulated in Benton County, Arkansas, having a bona fide circulation therein, *by at least two insertions*, sell at the front door of the Benton County Courthouse . . . [the described property].

(Emphasis added.) The Commissioner complied with the decree by inserting notice of the sale in the Northwest Arkansas Democrat Gazette two times within twenty days of the sale.

However, Gary contends that the notice should have been inserted three times. He cites

Arkansas Code Annotated section 28-51-304 (Repl. 2012), which reads in pertinent part:

> (a)(1) In all sales of real property at public auction, the personal representative shall give notice of the sale, particularly describing the property to be sold, and stating the time, place, and terms of sale.
>
> (2) The notice shall be printed one (1) time a week for three (3) consecutive weeks in a newspaper published or having a general circulation in the county in which the property is situated.

The circuit court refused to apply section 28-51-304 on the ground that it governs

those situations in which the personal representative is selling the property. The court was

correct. Section 28-51-304 imposes duties on the personal representative with regard to

publication of notice, but it makes no such demand on the seller in a judicial sale. Here, as

in all judicial sales, the court was the seller, not the personal representative. *Williams*, *supra*.

Gary argues next that the $450,000 price paid for the property was inadequate. He

cites Arkansas Code Annotated section 28-51-303(b)(2)(A), which provides that "if the sale

[of the property] is to be at public auction, the property shall be sold for not less than three-

fourths (3/4) of its appraised value." According to Gary, $450,000 was less than three-

fourths of the property's appraised value.

Initially, we observe that section 28-51-303(b)(2)(A), like section 28-51-304

discussed above, is inapplicable because it is part of the Probate Code that governs the

personal representative's sale of estate property. *See Keirs v. Mt. Comfort Enters., Inc.*, 266

Ark. 523, 526, 587 S.W.2d 8, 10 (1979) (emphasis added) (involving a judicial sale and

stating that "by analogy. . . when real property is sold at public auction *by a representative of*

*the decedent*, the law requires that such property be sold for not less than 75% of its appraised

value). But, in any event, the proof taken by the circuit court does not bear out Gary's claim that the sale price was inadequate.

Gary testified that the forty-six acres had been appraised at $2 million, but subsequent testimony indicated that he may have been referring to a 2006 appraisal. He offered no qualified appraisal of the property's value at the time it was sold in 2015. Moreover, the property had been on the market for many years without being sold, and a realtor testified that she would list the property for $600,000 to $750,000 in order to sell it quickly. Under these circumstances, the $450,000 sale price was not inadequate and does not shock the conscience of the court. *See Looper v. Madison Guar. Savings & Loan Ass'n*, 292 Ark. 225, 729 S.W.2d 156 (1987) (holding that the question of whether the price at a judicial sale shocks the conscience of the court is dependent on the various circumstances of the case).

For his third point, Gary argues that the sales notice contained a misleading description of the sale's location. The notice stated that the sale would take place "at the West Front Entrance of the Benton County Courthouse" on June 22, 2015, at 9:15 a.m. At the hearing below, Gary testified that he thought the sale would be held at the entrance, outside the courthouse. He said that he arrived at 8:30, waited on the steps, and intended to bid on the property. He further testified that, when nothing occurred, he entered the building about 9:30 but found no activity.

At the same hearing, court commissioner Brenda DeShields, who conducted the sale, testified that the sale was held in the courthouse's second-floor lobby, which may be considered inside the west, front entrance. According to DeShields, the west, front-entrance door is typically locked, and part of the stairs leading up to it are barricaded. She

testified that she usually asks attorneys to modify their notices to state that the sale will take place in the lobby, but that was not done in this case. DeShields also testified that the usual practice was to look out the locked west-entrance door to see if anyone was waiting, but she could not recall if that had been done here. However, she said that she announced the sale so that anybody waiting inside the front doors would have heard it. DeShields also said that Gary's attorney, Harry McDermott, attended the sale and was waiting on his client. DeShields agreed to delay the sale but McDermott did not object to it continuing.

Appellee Lauren Adams attended the sale and testified that she and another person checked outside to see if anyone was there before the sale occurred. She said that she did not see anyone, in particular Gary Howard. Another witness testified similarly.

After hearing this evidence, the circuit court ruled that the entrance door had been checked; that Gary was not there; that McDermott was present at the sale and did not object to its location; and that Gary was familiar enough with the courthouse to find his way in. Given the deference we accord to the circuit court's credibility rulings, *see Eifling v. Southbend, Inc.*, 2016 Ark. App. 393, ___ S.W.3d ___, we affirm on this point.

### III. *Additional Attorney's Fees*

Next, Gary argues that the circuit court erred in awarding additional attorney's fees to Adams for the work of her lawyer, Tamra Cochran. The following facts are helpful in explaining this issue.

After Adams had filed her attorney-fee lien against the forty-six acres in 2005, Gary, acting individually and as administrator of the Odis Howard estate, sued her for breach of contract, deceit, and negligence. Following a February 2011 trial, the jury found in Adams's

favor. Thereafter, the circuit court awarded $168,745.50 in fees to Adams's malpractice attorneys and $50,502.50 in fees to Cochran based on Adams being the prevailing party in a contract case. *See* Ark. Code Ann. § 16-22-308 (Repl. 1999). In *Howard II*, we reversed the malpractice attorneys' award on the ground that the case sounded primarily in tort rather than in contract. As for Cochran's fees, we noted that at least some of her time had been spent defending Adams in the lawsuit, for which we had determined that fees were not recoverable. We therefore remanded Cochran's fee award for reconsideration in light of our ruling.

On remand, the court understood, and the parties agreed, that Cochran would not be entitled to fees for the work she had conducted after Adams's lien had been established by the court in February 2007. Gary and Cochran settled the fee amount in open court for $30,030. The court then awarded that amount for the fees Cochran had accrued through February 21, 2007, in establishing Adams's attorney-fee lien against the estate.[2]

Moving forward to more recent events, Adams filed a petition after the 2015 foreclosure sale in which she sought an additional $78,600 in fees that Cochran had accrued between March 14, 2011 (after the abovementioned jury trial), and October 1, 2015. The circuit court awarded Adams $69,037.50. Gary now argues that the fee award was in error.

Gary's argument is difficult to follow in many respects. It is interspersed with matters that were long ago resolved in prior appeals, and it is unclear what newer matters he attempts

---

[2] One of the court's fee orders in this case incorrectly stated the date as February 11, 2011. We also note that the court later deducted certain costs owed to Gary and reduced Cochran's fee to $18,529.09.

to present. As best we can understand, Gary's primary contention is that the $30,030 awarded to Cochran following our opinion in *Howard II* is res judicata on the subject of Cochran's fees, and, consequently, no additional fees are owed to her. We disagree in light of the context in which the $30,030 award was made.

In *Howard II*, our purpose in ordering a recalculation of Cochran's original $50,502.50 fee bill was to ensure that she would not receive compensation for defending Adams in the 2011 tort suit. On remand, the parties settled the fee amount, and the circuit court entered the necessary order. We see nothing in the order or the settlement that precludes Adams from recovering additional fees for Cochran's work after the 2011 trial.

As a second part of his res judicata argument, Gary cites our ruling in *Howard III*, where we denied Adams's request for additional attorney's fees. Our denial in that case was based on the fact that Adams lost the appeal and was not the prevailing party below on the particular points at issue. Our holding did not prevent Adams from seeking additional fees on future aspects of the case.

Gary further claims that Adams is not entitled to an award for Cochran's fees because the fees were incurred due to "probate issues" rather than "contract issues." It is the appellant's burden to demonstrate reversible error. *Watkins v. Paragould Light & Water Comm'n*, 2016 Ark. App. 432, ___ S.W.3d ___. Moreover, we follow the established rule that we will not make a party's argument for him or her. *Wilson v. Pulaski Bank & Trust*, 2011 Ark. App. 383, 383 S.W.3d 919. Here, Gary's argument is simply not developed well enough for us to consider it. We therefore do not address its merits.



The same principle applies to Gary's assertion that the circuit court erred in awarding Adams past-due property taxes and related expenses on the forty-six acres. The argument is not developed enough for us to consider.

## IV. *Dower Interest*

Finally, Gary argues that the circuit court erred in refusing to correct the amount paid for Mabel Howard's dower interest in the forty-six acres. He claims that the court made a clerical error when it improperly stated the amount as $110,500 rather than $127,000.

The records in this appeal and the four prior appeals reveal the following.[3] Gary and Mabel agreed in 2005 to settle the amount of her dower interest for $127,000. In June 2006, the court ordered the forty-six acres sold and directed that Mabel be paid the agreed-on amount out of the sales proceeds. Later, the court ordered Gary to make a partial payment to Mabel of $94,000 with money that had been received by the estate.

In March 2007, Gary and Mabel jointly petitioned the court for approval of a settlement of her dower interest. The petition recited that Gary had already paid Mabel $94,000, and that "in compromise settlement" of the remaining amount, Gary was offering to pay Mabel $16,500. The court approved the settlement on March 16, 2007, stating that the settlement was a full, final, and complete compromise of Mabel's claims. The same day, Mabel filed a satisfaction of her claims and waived her dower and homestead rights. Based on the foregoing, Gary's payments to Mabel were $94,000, plus the $16,500 settlement, for a total of $110,500.

---

[3] We may take judicial notice of the record in a prior appeal. *Berks v.* State, 2016 Ark. 364 (per curiam).

Later in the case, the circuit court, with no objection from Gary, began referring to $110,500 as the amount of the dower payment. Likewise, our 2014 opinion in *Howard III* referenced the same amount, again with no objection from Gary. However, in subsequent motions filed in this court and in the circuit court, Gary asserted that the $110,500 figure was a clerical error and that the proper amount of his payment to Mabel was $127,000.

In the current proceeding, the circuit court refused Gary's request to alter the $110,500 amount, stating that it had lost jurisdiction to modify its previous orders. Gary now argues that the circuit court erred because Rule 60(b) of the Arkansas Rules of Civil Procedure provides that a court may correct clerical mistakes at any time. We conclude that Rule 60(b) is inapplicable because no clerical mistake occurred in this instance.

As outlined above, the history of the parties' dealings shows that Gary paid Mabel $110,500 for her dower interest pursuant to a 2007 settlement. Thus, the court used the proper amount, and there is no ground for reversal. We may affirm the circuit court if it reaches the correct result. *Almobarak v. McCoy*, 84 Ark. App. 152, 137 S.W.3d 440 (2003).

Affirmed.

HARRISON and VAUGHT, JJ., agree.

*Harry McDermott*, for appellant.

*Tamra Cochran, P.A.*, by: *Tamra Cochran*, for appellees.